William **THISTLETHWAITE** and Sol Lockshon, Appellants,

v.

The **CITY OF NEW YORK** et al., Appellees.

No. 639, Docket 73–2399.

United States Court of Appeals, Second Circuit.

Argued March 7, 1974.

Decided May 13, 1974.

Richard C. Levin, New York City, (Paul G. Chevigny, Richard G. Lyon, and David M. Olasov, New York City, of counsel), for appellants.

Nina G. Goldstein, New York City, (Adrian P. Burke, Corp. Counsel of the City of New York, and Milton H. Harris, New York City, of counsel), for appellees.

Before MOORE, MANSFIELD and OAKES, Circuit Judges.

MOORE, Circuit Judge:

Appellants, William Thistlethwaite and Sol Lockshon, were convicted in New York County Criminal Court of violating Section 13 of New York City's Parks, Recreation and Cultural Affairs Administration's Rules and Regulations by distributing pamphlets of a political nature in Central Park without the permit required by that section.[1] They

---

1. Section 13 provides:

No person shall hold any meeting, perform any ceremony, make an address, exhibit or distribute any sign, placard, declaration or appeal of any description in any park or park-street, except by permit by Parks, Recreation and Cultural Affairs Administration. Upon application, the Administrator shall issue such permit unless: (1) the use for which the permit is sought would substantially interfere with park use and enjoyment by the public; (2) the location selected is not suitable because of special landscaping and planning; (3) the location is not suitable because it is a specialized area including, but not limited to, a zoo, swimming pool, or skating rink; (4) the date and time requested have pre-

were each sentenced to pay a fine of $10 or to spend two days in jail. Both paid the fine. They then appealed to the Appellate Term where their convictions were affirmed without opinion. Application for leave to appeal to the New York Court of Appeals was denied, and appellants chose not to petition for review of this order by means of certiorari.

Appellants then brought the present action in the Federal District Court, seeking, on the basis of the Civil Rights Act, 42 U.S.C. § 1983 (1970), a declaratory judgment to the effect that Regulation 13 and the general permit dispensing system [2] were unconstitutional. As part of this action, appellants moved for a preliminary injunction against the defendants, their agents and employees, to prevent them from enforcing the regulations. The judge below held an evidentiary hearing in connection with this motion and decided against the appellants. Thereafter, the judge decided against the appellants on the merits of their case, holding them barred by res judicata.

The judge below, in reaching his decision, concluded that since there is no doubt that state forums can be appropriate for the determination of issues arising under the Federal Constitution, if an issue is argued before a state tribunal, its resolution at that level carries with it all the usual effects of res judicata required by full faith and credit. Thus, while it is clearly a federal policy to allow to every plaintiff with a colorable claim his day in court, it is equally clearly not a court's duty to encourage career litigants by allowing federal duplication of state trials. Thus, the District Court concluded, where there has been a clear election by the plaintiff of the state forum, that court's decision may, under the concepts of res judicata, preclude a new consideration of the Constitutional claims by federal courts in a suit under the Civil Rights Act.

Appellants vigorously contest his conclusion. It is argued that this suit which seeks prospective relief cannot be barred by a prior suit based on facts locked soundly in the past. It is further submitted that a § 1983 action is separate and different from any other cause of action arising under the same facts, and the usual dictates of res judicata should therefore bow to the intent of Congress to create an alternative method of vindicating Constitutional rights. Finally it is argued that there can be no election of forum in a criminal action, and that it is improper to require a defendant to stand mute in the dock to avoid "electing" against his right to a federal forum.

■■ In the current context we find these arguments unpersuasive. It is said, for example, that the present cause of action is different from the prior criminal suit because it attacks the whole system of permit dispensing and seeks prospective relief against its enforcement. However, it is quite clear that the gist of the current suit is that the regulations are unconstitutional; it is also clear that this question was at issue and determined against the appellants in the state action. A perusal of the briefs submitted to the Appellate Term cannot fail to convince that the whole regulatory system was assailed, on its face and as applied to appellants. Memorandum of Appellants in Support of Certification to the Court of Appeals at 3; Brief for Appellants in the Appel-

---

viously been allotted by permit. Whenever a permit is denied, alternative suitable locations and dates shall be offered to the applicant.

2. The rule in question, Section 11(a), provides:

A permit may be granted upon such terms and conditions as the Administrator shall reasonably impose. Every permit shall be of a duration reasonably deemed appropriate by the Administrator for the use of the park and its facilities by the public. The Administrator shall prescribe and make readily available forms of application for permits and copies of the Rules and Regulations in force. In granting a permit, the Administrator shall have the power to require a deposit or collateral or surety as a protection to the City.

late Term, First Department at 9–10. We are thus convinced that the assault was broadly based and broadly considered. Nor does the prospective nature of the relief sought necessarily preclude estoppel. In appellants' view there has been merely a determination of law based on "expired" facts and the prior decision should be considered here solely on the basis of stare decisis—persuasive perhaps but certainly not conclusive. However, it was in fact determined by a court of competent jurisdiction that it was proper for the Parks Administration to require distributors of political literature who wish to distribute their pamphlets in a park to obtain a permit. If this determination, applying the regulation in question to facts identical to those presently alleged, is seen to bind appellants, they certainly cannot succeed on the present course of litigation.

■ Having argued that a strict application of the rules of collateral estoppel will not bar this action, appellants in the alternative contend that the policy underlying the Civil Rights Act would best be served by denying the effects of collateral estoppel under these circumstances. As appellants argue:

> Therefore to apply these doctrines [res judicata and collateral estoppel] mechanically to all § 1983 actions would be to thwart a Congressional determination that the policies and rights embodied in § 1983 are often of a higher priority than the competing policies of judicial economy and comity.

Appellants' Br. at 18.

While we recognize the particular nature of the Civil Rights Act and the intent of Congress embodied therein, we are not of the opinion that the trial judge applied the doctrines of res judicata "mechanically" to the facts of this case; further we do not read in the act any intent to foster career litigants. Lackawanna Police Benevolent Association v. Balen, 446 F.2d 52 (2d Cir. 1971); *see also* Rosenberg v. Martin, 478 F.2d 520, 525 (2d Cir. 1973); Friendly, Federal

Jurisdiction: A General View 101 n. 113. Thus, we do not see reason to overturn the judgment of the court below.

■ Finally, it is argued that there was in fact no election of the state forum. It is contended that a criminal defendant is given no choice as to the time and the place of his prosecution. The picture is presented to us of a prisoner in the dock standing mute for fear of losing his right to a federal adjudication of his constitutional claims. We are not convinced that an election of the state tribunal is required to hold the present action barred by collateral estoppel. In fact we are unclear how a determination of the constitutionality of the Regulation could be avoided at the state level. Since the appellants were unaware of the Regulation, it cannot be said that they chose to bring on their prosecution by deliberately violating it; nor do we see how the trial court or any appellate court could avoid scrutinizing the Regulation for possible constitutional defects even at appellants' request. However, in connection with this argument there are two matters that should be raised in passing. First, although, as was stated above, the usual criminal case provides little suggestions of election, the present case provides a good deal more. To quote Mr. Lockshon:

> All I know is before trial started there was somebody from some agency, and he said, "Let's drop the whole matter," and since I had begun it I said, "No, this I think is a Constitutional thing. I have a right to give out leaflets. I want to go through with this thing."

62a.

Although it is correct, as appellants contend, that Mr. Lockshon cannot "elect" for Mr. Thistlethwaite, it is apparent that they had the same attorney and were pursuing their remedies in conjunction. Thus, it might be argued, that Mr. Lockshon, in declining the offer, acted as spokesman. At the very least, it seems clear that both of them

had determined to pursue the New York action to a conclusion on constitutional grounds. Second, it should be noted that habeas corpus is generally available in situations similar to the one at hand. Should the appellants show "possible adverse collateral effects" of their conviction, they can gain a federal hearing by that route. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1968); *see also* Sibron v. New York 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); and Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

For the above reasons, the judgment of the court below is affirmed.

OAKES, Circuit Judge (dissenting):

I dissent. The decision of the majority, without citation to any relevant authority, for the first time to my knowledge, applies the doctrine of res judicata or collateral estoppel to bar a § 1983 action challenging the constitutionality of a law solely on the basis that the plaintiff has been at one time convicted of a Violation of that law. As such the majority opinion is an entirely unwarranted extension of the decisions of this court on collateral estoppel in civil rights actions; it is contrary to the underlying law of collateral estoppel generally;[1] and it sets a precedent in the area of first amendment challenges that is, to say the least, unfortunate.

To understand the issues clearly it is necessary to state the facts in more detail than does the majority. Thistlethwaite's conviction of a violation of § 13 of the Rules and Regulations of the New York City Parks, Recreation and Cultural Affairs Administration (the "Rules and Regulations")[2] was on January 13, 1972, in the Criminal Court of the City of New York for the distribution in Central Park on June 27, 1970, of a political pamphlet advocating boycott of the movie "Woodstock Nation" as a "capitalistic profanation" by a large American corporation ("Warner Bros."). Lockshon's conviction of such a violation was on the same date (in a consolidated proceeding) but for the entirely unrelated distribution of a pamphlet in protest of the Indochina war on April 17, 1971, on the southwest sidewalk at the corner of 81st Street and Central Park West, near the American Museum of Natural History. Throughout the New York courts, the only arguments made by the two, appellants here, were that § 13 was unconstitutional *on its face*.[3] Here they brought suit seek-

1. Res judicata is not really here involved since none of the defendants named as parties herein were parties to the earlier suit. United States v. Harrison County, 399 F.2d 485, 491 (5th Cir. 1968), cert. denied, 397 U.S. 918, 90 S.Ct. 925, 25 L.Ed.2d 99 (1970).

2. Section 13. Meetings.
   No person shall hold any meeting, perform any ceremony, make an address, exhibit or distribute any sign, placard, declaration or appeal of any description in any park or park-street, except by permit from Parks, Recreation and Cultural Affairs Administration. Upon application, the Administrator shall issue such permit unless: (1) the use for which the permit is sought would substantially interfere with park use and enjoyment by the public; (2) the location selected is not suitable because of special landscaping and planting; (3) the location is not suitable because it is a specialized area including, but not limited to, a zoo, swimming pool, or skating rink; (4) the date and time requested have previously been allotted by permit. Whenever a permit is denied, alternative suitable locations and dates shall be offered to the applicant.
   While § 13 contains no explicit reference to "pamphlets" or "handbills", appellants were convicted of its violation so that something in it has been construed by the New York authorities and courts to include handbills and pamphlets.

3. Their contention in the motion to dismiss before the Criminal Court was that "this or any licensing requirement for an individual's distribution of political literature in parks of the City of New York is in contravention of the free speech and free press guarantees of the Federal and New York State Constitutions." (Motion to Dismiss 2-3.) Their contention before the Appellate Term was "that the regulation is unconstitutional on its face." (Brief to App. Term 5.) So was their argument to the Court of Appeals:

ing declaratory and injunctive relief on the basis that § 13 as implemented by § 11(a) of the Rules and Regulations [4] "both as fully implemented and as applied to plaintiffs" (Par. 20 Complaint) is unconstitutional, particularly on the basis that the "permits . . . purportedly required by Section 13 of the Rules and Regulations, have not been, and are not being, issued by the Administration."

The issue whether § 13 is void on its face is entirely different from the question whether § 13 as applied is permissible. I say the issue is different, because the facial challenge in the criminal cases to § 13 alone raised only the question whether a city may constitutionally require permits to be obtained under conditions having a rational relationship to the interests of the public in enjoyment of parks and their facilities. Section 13 *on its face* requires permits to be issued, except when certain specific reasons exist for denial—as where there would be interference with park use by others, use of a site in a specialized area such as a zoo or swimming pool, use of a preempted site and time. Under such circumstances, even when the permit is denied, § 13 requires that "alternative suitable locations and dates should be offered to the applicant." Thus, under Poulos v. New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953), relied upon by appellees here, it is at least probable that § 13 is valid *on its face.*[5] *Compare* Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

But here appellants contest the constitutionality of § 13 as implemented by § 11(a) and the provisions of the permit application which, taken together, facially appear to prohibit *any* distribution of pamphlets or handbills in parks or park streets, note 3 *supra.*[6] This issue was not litigated in the state court, and I am

---

". . . Section 13 is unconstitutional on its face . . . . And it is on this basis that petitioners seek review at the Court of Appeals." (Memorandum in Support of Certification to the Court of Appeals 3.) The majority's claim that the Rules and Regulations were attacked "as applied" as well is simply not supported by the record.

4. Section 11(a) reads:
   A permit may be granted upon such terms and conditions as the Administrator shall reasonably impose. Every permit shall be of a duration reasonably deemed appropriate by the Administrator for the use of the park and its facilities by the public. The Administrator shall prescribe and make readily available forms of application for permits and copies of the Rules and Regulations in force. In granting a permit, the Administrator shall have the power to require a deposit or collateral or surety as a protection to the City.
In implementing this section the Administrator has caused permit applications to be made which state: "It is prohibited to distribute . . . any pamphlets, handbills, placards, signs or any other appeals . . . within any park or on any park street" (Par. 4) and "The permit . . . is revocable at any time in the absolute discretion of the Commissioner." (Par. 9.)

5. *Poulos,* however, has been strongly criticized. *See, e. g.,* Monaghan, First Amendment "Due Process," 83 Harv.L.Rev. 518, 542–43 (1970).

6. Appellees argue that "the evidence at the hearing below confirmed that permits are issued as a matter of course and, in accordance with [Section 13's] language, only so as to deal reasonably with the various competing uses of the parks (A 68–74)." (Brief p. 20) While the evidence in question fails to support the assertion that permits are issued "as a matter of course," it does contain the City's assertion that paragraph 4 of the permit application, which explicitly prohibits distribution of leaflets, is "interpreted to mean that no distribution of leaflets or other matter is permitted unless it's specifically permitted by the terms of the permit." (A–81.) In fact, appellant Lockshon was once in June, 1973, just before the hearing on the preliminary injunction in this case, apparently issued a permit under certain prescribed circumstances. There is no real evidence, however, and there are no findings in any event, as to whether paragraph 4 is often used by the authorities to say, as Lockshon claimed a Mr. Saks of the Parks Department said to him in reference to distributing leaflets in Central Park, "Nothing doing . . . Well, number four says . . . you are not allowed to distribute leaflets in the park." (A–53). In short, on the record before us, the implication is that the permit system has been used to disallow leaflets the content of which the Commissioner or his lieutenants disapprove. Whether this implication would be borne out by a trial on the merits is a question that will never be deter-

not aware of any decision holding that collateral estoppel applies to issues not litigated on facts not presented. "Issue preclusion," as collateral estoppel is now sometimes called, has always applied only to those issues completely litigated and specifically determined. Cromwell v. County of Sac, 94 U.S. 351, 353, 24 L.Ed. 195 (1876); Syms v. McRitchie, 187 F.2d 915, 918 (5th Cir. 1951).

Certainly our own Lackawanna Police Benevolent Association v. Balen, 446 F. 2d 52 (2d Cir. 1971) (per curiam), and Rosenberg v. Martin, 478 F.2d 520, 525 (2d Cir. 1973), the only cases relied on by the majority, do not go so far. *Lackawanna* involved a direct constitutional challenge in a federal § 1983 action on the same grounds with the same parties and with the same facts as had already been tried in a civil action in the state court. In addition, in *Lackawanna* the plaintiff had voluntarily chosen the state court as his initial forum. In *Rosenberg* the plaintiff brought a § 1983 action for damages caused by his being deprived of a fair trial through pretrial publicity. There then Chief Judge Friendly allowed that:

> It might be contended against giving the New York judgment preclusive effect that . . . a state criminal judgment should have no more effect by way of issue preclusion in a federal civil rights action than it would in federal *habeas*. . . .

478 F.2d at 525. In *Rosenberg* that contention was not answered, because the plaintiff's constitutional claim that he was deprived of a fair trial had already been disproven *both* in the state courts *and* in the federal court pursuant to a habeas petition.

The cases cited in H. Friendly, Federal Jurisdiction: A General View, 101–02 n. 113 (1973), are equally inapposite. All involve the attempt to upset the *judgment* of a state court through collateral attack. Were appellants here attacking the judgment of their convic-

tions in the city court, then the majority would be correct in dismissing their civil rights complaint and suggesting the alternative of habeas, but appellants have made it clear that they are done with the past and their concern is the future. To hear their claims and grant them their relief would allow appellants to hand out leaflets in the park, but it would not affect one iota their convictions for violations of the ordinance. And more importantly, we would not be deciding an issue already litigated and decided in a state court, for it simply is not the same question whether an ordinance requiring permits is unconstitutionally applied by screening applicants by the content of their leaflets or is unconstitutional on its face so as to void the conviction of one who never knew of or applied for a permit to distribute.

Nor are the judicial-conservation policies to be served by the doctrine of issue preclusion at all upheld by advancing that doctrine here. The most that this decision does is to prevent Messrs. Thistlethwaite and Lockshon from asserting the unconstitutionality of § 13, merely delaying the determination on the merits, for anyone else may still and undoubtedly will bring the issue of constitutionality of §§ 13 and 11(a) as applied to the federal courts in a § 1983 proceeding. Indeed it might be said that the application of "issue preclusion" in civil rights litigation can increase the federal courts' burden which so many bemoan: one case to determine whether there is collateral estoppel; another to raise the issue, regardless of the outcome of the first, for inevitably there are numbers of potential plaintiffs willing to test such laws at least when represented by one of many "public interest" legal organizations.

As the court below recognized there is *no* case which has held collateral estoppel to result from a criminal conviction so as to defeat a civil rights action seeking a declaratory judgment as to future enforcement of a statute. It is doubly

mined, however, for, although none of these allegations and defenses were raised, much less litigated, in the state court, the majori-

ty finds them barred by collateral estoppel from determination here.

unfortunate, I think, that the first such case is one in which the right asserted to have been violated is a preferred right—that of free expression of political thought. If any right is to be protected this would seem to be it. I suppose one can fault a given plaintiff, in the majority's terminology, for being "a career litigant" although appellants' *involuntary* defense of a criminal action in the state courts [7] and their institution of a single federal civil rights action in respect to a very important matter—the right to distribute handbills or leaflets in New York City Parks or on "park-streets"—hardly seems to me to justify the majority's derogatory appellation. But regardless how appellants individually may be characterized, their asserted rights to distribute in the future are significant and so significantly different from those adjudicated in the New York criminal case as to preclude application of the doctrine of collateral estoppel here.

I would reverse the judgment dismissing the complaint and remand.

7. The majority acknowledges that "Since the appellants were unaware of the Regulation, it cannot be said that they chose to bring on their prosecution by deliberately violating it . . . . ."