Severin HJELLE et al., Plaintiffs,

v.

James W. BROOKS, Commissioner of Fish and Game for the State of Alaska, et al., Defendants.

Civ. A. No. A–191–73.

United States District Court, D. Alaska.

June 11, 1976.

Motion for Reconsideration Denied Dec. 9, 1976.

William B. Rozell, Faulkner, Banfield, Doogan, Gross & Holmes, Juneau, Alaska, Douglas M. Fryer, Moriarty, Long, Mikkelborg & Broz, Seattle, Wash., for plaintiffs.

Richard A. Bradley, Acting Deputy Atty. Gen., Juneau, Alaska, Gerald W. Markham, Asst. Atty. Gen., Anchorage, Alaska, for defendants.

Before WRIGHT, Circuit Judge, and VON DER HEYDT and PLUMMER, District Judges.

## OPINION

PLUMMER, Senior District Judge:

Plaintiffs, a group of commercial king crab fishermen, seek injunctive and declaratory relief to prevent enforcement against them by the State of Alaska of State fishing regulations in the Bering Sea outside of three miles from Alaska's coastline.[1] The regulations in effect at the time this suit was commenced[2] were repealed after we issued our prior opinion enjoining their enforcement. *Hjelle v. Brooks,* 377 F.Supp. 430 (D.Alaska 1974). After repealing the old regulations, the State adopted emergency interim regulations on May 9, 1974, and then the current regulations on June 15, 1974. We refused to enjoin the emergency regulations because of their possible validity under a rationale we suggested in *Hjelle.*[3] Thereafter, on July 15, 1974, the State filed criminal charges against seven crab fishermen who are plaintiffs in this federal action for violation of the new regulations. The third amended complaint, challenging the regulations cited in note 1, was filed July 31, 1974, fifteen days after the criminal charges were filed. Since then, the state and the federal actions have proceeded independently until we granted a stay of our proceedings at the parties' request pending the decision of the Alaska Supreme Court in the state proceeding.[4]

---

1. The regulations are 5 AAC 34.005, 34.020, 34.030, 34.035, 34.040, 34.050, 34.060, 34.070, 34.085, 34.090, 34.095, 34.096, 34.097, 34.900, 34.910, 34.915, and 34.920(a). Plaintiffs also seek a declaration of invalidity of A.S. 16.10.-190, 16.10.200 and 16.10.210 insofar as said statutes purport to authorize the regulation of plaintiffs fishing for king crab in the Bering Sea.

2. 5 AAC 07.760 and 36.040.

3. At 377 F.Supp. 441 we stated (emphasis in original):

"[Alaska's] regulation of certain extraterritorial conduct would pass constitutional muster if its regulations were directed at conserving the crab fishery *within* Alaska's waters by regulating crabbing in that area and *in order to facilitate enforcement,* by prohibiting the possession of crab in the state during the closed season, even if that crab were caught outside the state."

4. Defendants' closing argument, page 8, filed September 26, 1975; plaintiffs' reply argument, page 6, filed October 9, 1975.

On January 19, 1976, the Supreme Court of Alaska issued its opinion in *State v. Bundrant,* 546 P.2d 530 (Alaska 1976). The petition for rehearing was denied March 26, 1976, 547 P.2d 838. In *Bundrant* the Alaska Supreme Court reversed the state trial court's dismissal of the criminal charges brought against seven crab fishermen. The decision upholds the constitutionality of the regulations under which the fishermen were charged, and which are in issue here.

The question now presented is whether this court should make a second determination of the constitutional validity of the State's Bering Sea king crab regulations. For the reasons that follow, we think that this court should not do so. Accordingly, we dismiss as to all plaintiffs and all claims. We rely chiefly on rationales developed in cases relating to abstention.

■ Abstention by a federal court when there is a pending state criminal prosecution is governed by *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and subsequent Supreme Court cases. *Younger* provides that equitable relief in federal court is not available to interfere with a pending state criminal proceeding absent bad faith harassment by the state officials. In our case, only seven of the federal plaintiffs are involved in pending state criminal proceedings. Normally, each federal plaintiff is treated individually for purposes of abstention. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Steffel v. Thompson,* 415 U.S. 452, 471 note 19, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Accordingly, absent other factors, the criminal proceedings against the seven state defendants should not be imputed to the other thirty-seven federal plaintiffs. However, when there is sufficient "joint activity and common interest" abstention may be justified even as to those federal plaintiffs who are not state defendants. *Allee v. Medrano,* 416 U.S. 802, 832 n. 8, 831–832, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (Burger, C. J. concurring). *Hicks v. Miranda,* 422 U.S. 332, 348–349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); *Sole v. Grand Jurors For the Counties of*

*Passaic and Bergen,* 393 F.Supp. 1322, 1329 n. 12 (D.N.J.1975). In this case, there is such joint activity and common interest.

To lightly impute state prosecution to a federal plaintiff not a party thereto would obviously frustrate the policies announced in *Steffel, supra,* and *Dombroski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Yet in this case the pleadings and testimony of plaintiffs so clearly demonstrate the "joint activity and common interest" of all plaintiffs that we believe imputation is proper.

Severin Hjelle, by affidavit filed June 17, 1974, stated that:

"[t]his action was originally commenced . . . on behalf of the members of the North Pacific Vessel Owners Association [NPVOA]."

By supplemental memorandum filed June 21, 1974, plaintiffs indicated that they had

"now included as parties all non-resident members of the [NPVOA] who are prepared to commence fishing in the Bering Sea on June 26, 1974."

Hjelle's affidavit also indicated that he was President of the NPVOA as of June 17, 1974. Apparently Hjelle's incumbency expired sometime thereafter, for at trial Konrad Uri, a federal plaintiff and state defendant, testified that he was President of the NPVOA.

In an affidavit of May 23, 1974, Hjelle stated:

"To avoid a complete lack of management for the Bering Sea king crab fishery, the individual members of the [NPVOA], now comprising some 42 vessel operators and the seven processors who purchase the vast majority of king crab caught in the Bering Sea have formed an organization called the Shellfish Conservation Institute. The institute has adopted regulations . . . which honor the treaty restrictions on the capture of king crab and, in addition, [has] proposed to commence the king crab fishing season in the Bering Sea on June 26, 1974."

Hjelle's June 17 affidavit explained how individual fishermen looked to the Shellfish

Conservation Institute for guidance in pursuing their work:

> "All plaintiffs in this case stand ready to commence fishing in the Bering Sea on or before June 26, 1974, *as specified in the industry regulation* of the Shellfish Conservation Institute and will suffer irreparable harm if not permitted to do so." (Emphasis added)

In a telegram attached as an exhibit to plaintiffs' third amended complaint, the Alaska Fish and Game Commissioner recognized as a "flagrant challenge of authority":

> "the announcement by the Shellfish Conservation Institute that it had adopted king crab fishing regulations on the basis that it did not recognize the regulations and jurisdiction of the State of Alaska . . . ."

The most recent indication of the joint nature of the state and federal proceedings is the agreement by all federal plaintiffs, including those not under state indictment, to a stay of the federal proceedings pending the decision of the Alaska Supreme Court.

■ While the numerous federal plaintiffs own their vessels and gear individually rather than collectively, it is clear to us that they are all so closely related in terms of "control and management" (*Doran,* 422 U.S. at 928, 95 S.Ct. 2561), that application of the "imputation" principle is proper.[5] The participation of Konrad Uri, President of the NPVOA, in the state proceeding gives the federal plaintiffs the "assurance that those presently being prosecuted will challenge the constitutionality of the regulations." Accordingly, in the discussion that follows, we will treat all federal plaintiffs identically.

One possible ground for invoking *Younger* abstention is that the state criminal proceedings, begun on July 15, 1974, were commenced prior to the filing of the third amended complaint, filed July 31, 1974. By treating the third amended complaint as a new cause of action, we would be within *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), which requires abstention if the state criminal charges are brought before any federal proceedings of substance on the merits. Although we may have discretion to so interpret the third amended complaint, compare *Griffin v. County School Board of Prince Edward County,* 377 U.S. 218, 226–227, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964) with *Cherry v. Morgan,* 267 F.2d 305 (C.A.5 1959), we decline to do so. Instead we look to the plaintiffs' own actions.

---

**5.** We perceive the facts before us as placing this case somewhere between *Steffel* and *Allee.*

In *Steffel,* the federal plaintiff was not a state defendant, although his handbilling companion was. It was precisely this relationship which enabled Steffel to overcome the case or controversy requirement. 415 U.S. at 458–60, 94 S.Ct. 1209. According to Chief Justice Burger, concurring in *Allee:*

> "There was no indication in [*Steffel*] that the petitioner and the arrestee were associated otherwise than in the distribution of antiwar handbills. Furthermore, in *Steffel,* the petitioner departed to avoid arrest while his companion in handbilling stayed. The joint activity of petitioner and his companion in *Steffel* ceased prior to the arrest of the companion. Finally, there is no indication that the arrestee would seek to or be able to vindicate petitioner's rights in the criminal proceeding . . . ."

416 U.S. at 831, 94 S.Ct. at 2208 (Burger, C. J., concurring).

In *Allee, all* individual federal plaintiffs were subject to state prosecution. 416 U.S. at 821–26, 830–32, 94 S.Ct. 2191 (Burger, C. J., concurring). Thus the Chief Justice noted that the union with which the individual parties were associated should not be able to surmount *Younger* obstacles which could not be overcome by its individual members. *Id.* at 830–31, 94 S.Ct. 2191.

The situation such as that before us was considered by the Chief Justice, who suggested:

> "There is no need to attempt to further define those situations in which it would be proper to impute the state criminal prosecution of one who is not a federal plaintiff to one who is. The association of the state criminal defendant and the federal plaintiff necessary for imputation will depend upon facts of joint activity and common interest."

*Allee, supra,* 416 U.S. at 832 n. 8, 94 S.Ct. at 2208 (Burger, C. J., concurring). The case before us is a somewhat stronger one for imputation than is the hypothetical one described above, since here seven of the 44 federal plaintiffs are state defendants.

Prior to our issuance of a stay this case was near its conclusion. The trial had been held and proposed findings and final written arguments had been submitted. Thereupon, at pages 7 and 8 of defendants' closing argument the following statement and proposal was made:

"Although the Court need not dismiss this action on abstention grounds, the imminence of a ruling by the Alaska Supreme Court in the related criminal cases would warrant a stay of this action until the State cases are resolved. The briefs filed in those cases demonstrate that the same parties have through the same counsel presented many of the same legal arguments. Those arguments have been through the refining process of trial court adjudication and are expected by all to be resolved on appeal shortly. Needless to say, the State is hopeful of success in those cases, and we are confident that the fishermen will honor the Alaska Supreme Court's rulings. Accordingly, principles of comity would be served by a temporary stay of this proceeding pending the Alaska Supreme Court's decision, following which this Court could entertain motions to dismiss this action or such further briefing as may be desired."

Plaintiffs concurred in this proposal. While not calling their agreed procedure "abstention," the parties did agree on principles of comity to a stay of the federal proceeding until the state court could rule. The stay was granted and the Alaska Supreme Court has ruled. The question is whether a party can voluntarily seek a prior state court ruling on his claim and then reapply to a federal court if the state ruling is adverse, rather than pursue his state court remedies.

Two United States Supreme Court cases control the resolution of this problem. *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). *England* involved *Pullman*[6]

rather than *Younger* abstention, but it is relevant because a pending federal case was interrupted by a state court determination of the merits of the federal claim, similar to our case. *Huffman* involved *Younger* abstention and shows the effect of a state court decision on concurrent proceedings in federal court.

In *England* the three-judge district court abstained because of the presence of uncertain issues of state law. Both the state and federal issues were submitted to the state court which ruled adversely to the federal plaintiffs on each. When they returned to the district court, plaintiffs' claims were dismissed on grounds of res judicata and full faith and credit. 194 F.Supp. 521 (E.D. La.1961). On review by the Supreme Court, it held that federal plaintiffs were not required to submit to the state court the federal issue, but were only required to inform the state court of the issue so that the state could construe state law in light of federal constitutional questions. Resolution of the federal issue could be expressly reserved to the federal forum by not submitting it to the state court. Thus, the Supreme Court preserved federal plaintiff's choice of a federal forum to resolve his federal claim. The Court did not, however, reserve to the federal plaintiff the right to have the matter resolved twice. At 375 U.S. 419, 84 S.Ct. 466 the Court stated:

"But we see no reason why a party, after unreservedly litigating his federal claims in the state courts, although not required to do so, should be allowed to ignore the adverse state decision and start all over again in District Court."

If this language is directly applicable to our case, then federal plaintiffs have waived their rights to a determination by us of the merits of their federal claim. However, there are substantial differences between *Pullman* and *Younger* abstention and blind cross-application of principles is unwarranted. For a distinction see *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 616 n. 2, 95 S.Ct.

---

**6.** *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

1200, 43 L.Ed.2d 482 (1975) (Brennan, J. dissenting). But there are similarities. Here, federal plaintiffs were not required to request a stay of the federal proceedings in order to allow the state court to rule. By doing so they unreservedly litigated their federal claims in state court when not required to do so. Thus, their reapplication to our court is similar to the situation in *England* where the Supreme Court held that a litigant is not entitled to two chances on his federal claim.

Even if the above language is not directly applicable, nevertheless *England* is helpful in other aspects. The reason that the Court allowed the plaintiff to preserve his right to return to federal court by reserving the federal issue from the state court was to preserve plaintiff's right to choose a federal forum for his federal claim. "The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." 375 U.S. 415, 84 S.Ct. 465 quoting *Wilcox v. Consolidated Gas Co.,* 212 U.S. 19, 40, 29 S.Ct. 192, 53 L.Ed. 382 (1909). The major justification for preserving the federal district court forum is to preserve federal fact finding. " 'It is the typical, not the rare, case in which constitutional claims turn upon the resolution of contested factual issues.' " 375 U.S. at 416–417, 84 S.Ct. at 465 quoting *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). But where the state proceeding is criminal, federal fact finding is preserved through habeas corpus. At note 8, 375 U.S. 417, 84 S.Ct. 465, the court states:

> "Even where fact findings on federal constitutional contentions are for state tribunals to make in the first instance, as in state criminal prosecutions, they are not immune, when brought into question in federal habeas corpus, from District Court consideration and, in proper cases, from de novo consideration. *Townsend v. Sain,* 372 U.S. 293, 312–319, 83 S.Ct. 745, 757–760, 9 L.Ed.2d 770."

Thus, the reason for allowing the federal plaintiff immediately to return to the abstaining federal court after a state decision is lacking where the state proceeding is criminal and habeas corpus available. Federal fact finding is preserved in other ways.

Implicit in all of this is that after *Younger* abstention a federal plaintiff should not reserve his federal claim or defense, but should unreservedly submit it to the state court. Once having done so, he cannot immediately return to federal court after an adverse ruling, but must pursue his remedies by appeal and habeas corpus. He cannot return to the three-judge district court that abstained, at least not until the state proceeding is final.

The other guiding case in our decision is *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). It involved a civil nuisance action by the State of Ohio seeking to close a theatre for exhibiting pornographic movies. The Court held that this proceeding was sufficiently similar to a criminal prosecution to be within the limitations of *Younger.* The federal plaintiff sought to distinguish the nuisance action because of the non-availability of habeas corpus. The Court replied at 420 U.S. 606, 95 S.Ct. 1209 (emphasis in original):

> "Appellee's argument, that because there may be no civil counterpart to federal habeas it should have contemporaneous access to a federal forum for its federal claim, apparently depends on the unarticulated major premise that every litigant who asserts a federal claim is entitled to have it decided on the merits by a federal, rather than a state, court. We need not consider the validity of this premise in order to reject the result which appellee seeks. Even assuming, *arguendo,* that litigants are entitled to a federal forum for the resolution of all federal issues, that entitlement is most appropriately asserted by a state litigant when he seeks to *relitigate* a federal issue adversely determined in *completed* state court proceedings. We do not understand why the federal forum must be available prior to completion of the state proceedings in which the federal issue arises, and the considerations canvassed

in *Younger* militate against such a result."

In the succeeding paragraphs the Court may have undercut the premise of the right to a federal court forum. But to the extent that there is such a right, the majority felt that it arises at the termination of the state court proceedings.

The three dissenting justices did not agree that *Younger* was applicable. But they implied that where *Younger* abstention is applicable federal relief is not available until the termination of the state proceedings. At note 2, 420 U.S. 616, 95 S.Ct. 1214, Mr. Justice Brennan discussed this point:

> "Abstention where authoritative resolution by state courts of ambiguities in a state statute is sufficiently likely to avoid or significantly modify federal questions raised by the statute is another matter. Abstention is justified in such cases primarily by the policy of avoidance of premature constitutional adjudication. The federal plaintiff is therefore not dismissed from federal court as he is in *Younger* cases. On the contrary, he may reserve his federal questions for decision by the federal district court and not submit them to the state courts. *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Accordingly, retention by the federal court of jurisdiction of the federal complaint pending state court decision, not dismissal of the complaint, is the correct practice. *Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 512–513, 92 S.Ct. 1749, 1758, 32 L.Ed.2d 257 (1972)."

If *Younger* abstention requires dismissal, as the quotation indicates, the federal plaintiffs' only remedies are to appeal the state court ruling and habeas corpus. Both remedies come after the termination of the state court proceedings. Thus, in the dissenters' view, as in the majority's, to the extent that there is a remedy, it comes after the state court decision is final.

The state has raised the issue of the res judicata and collateral estoppel consequences of the Alaska Supreme Court decision. Because of our holding that the consequences of abstention prevent relitigation of the merits of plaintiffs' claims at this time, we need not consider the applicability of res judicata and collateral estoppel. It is not an issue entirely free from doubt. *Huffman, supra,* 420 U.S. at 607, note 19, 95 S.Ct. 1200. See *Thistlethwaite v. City of New York,* 497 F.2d 339 (2nd Cir. 1974); *Goodrich v. Supreme Court of South Dakota,* 511 F.2d 316 (8th Cir. 1975). Compare the res judicata implications had a declaratory judgment been rendered by this court. *Steffel v. Thompson,* 415 U.S. 452, 470 (Brennan for the Court), 477 (White concurring), 482 (Rehnquist concurring), 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). The reversal and remand by the Alaska Supreme Court may not be a final decision for res judicata purposes. *East Bay Union of Mach., Local 1304 v. Fiberboard Products Corp.,* 285 F.Supp. 282 (N.D.Cal.1968), aff'd. 435 F.2d 556 (9th Cir. 1970). Because resolution of these complex questions is not necessary under our reasoning, we will not do so at this time.

In essence, what has happened in this case is abstention by stipulation. We see no difference between the consequences of abstention by agreement of the parties or by order of the court. In either case federal review of the state decision is postponed until the state proceedings are final. We do not sit as a court of appeals to review the decision of the Alaska Supreme Court.

For the reasons stated, the third amended complaint is dismissed as to all federal plaintiffs. The injunctive order issued by this Court on May 16, 1974, is now vacated. All prior controversy is declared moot.

WRIGHT, Circuit Judge, concurring in the result.

The res judicata and collateral estoppel effects of the final decision[1] of the Alaska

---

1. The fact that only three of five Alaska Supreme Court justices participated in *Bundrant* does not detract from the precedential value of that decision. *Cf.* Recent Cases, 86 Harv.L.

Supreme Court in *State v. Bundrant,* 546 P.2d 530 (Alaska 1976), require that we dismiss the federal complaint as to those seven federal plaintiffs who are parties defendant in the state criminal proceeding.[2]

I agree with the analysis of the majority imputing the state criminal prosecution to the remaining 37 federal plaintiffs. While the relationship between the seven and the 37 is not such that the doctrines of res judicata and collateral estoppel should be applied to those federal plaintiffs who are not state defendants, the relationship is sufficiently close to apply *Younger* principles to all federal plaintiffs.

Rev. 1307 (1973); Comment, 50 Wash.L.Rev. 901, 907 & n. 42 (1975).

**2.** The constitutional issues raised in the third amended federal complaint are the same as those decided by the *Bundrant* court. There is identity of parties as to the seven federal plaintiffs who are also state defendants in *Bundrant.* The federal defendants are in privity with the State of Alaska, the state plaintiff. Therefore, the estoppels are mutual.

**3.** Plaintiffs' third amended complaint is actually a "supplemental pleading," since it "[sets] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed.R. Civ.P. 15(d). The repeal of a statute, regulation or ordinance the enforcement of which has been previously enjoined, followed by enactment of a new measure, is a typical situation calling for the filing of a supplemental pleading. *See, e. g., Griffin v. County School Board of Prince Edward County,* 377 U.S. 218, 226–27, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

While an amended complaint is not ordinarily regarded as a new "cause of action," this supplemental pleading should be. *Compare Cherry v. Morgan,* 267 F.2d 305, 305–06 (5th Cir. 1959). (But this does not preclude us from entertaining the supplemental pleading in the same lawsuit. *Cf. Rowe v. United States Fidelity and Guaranty Co.,* 421 F.2d 937, 942–44 (4th Cir. 1970). The need to avoid multiplicity of lawsuits, evidenced by ancillary and pendent jurisdiction doctrine, and by rules allowing liberal pleading and joinder of claims, supports a policy of freely admitting supplemental claims. *See Case-Swayne Co. v. Sunkist Growers, Inc.,* 369 F.2d 449, 462 (9th Cir. 1966), *rev'd on other grounds,* 389 U.S. 384, 88 S.Ct. 528, 19 L.Ed.2d 621 (1967). *See generally* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1506

I would treat the third amended complaint as a new claim, filed after the promulgation of new state regulations and commencement of state criminal proceedings pursuant to them.[3] *Younger* teaches that we must dismiss the third amended complaint as to all federal plaintiffs deemed subject to the state criminal proceeding.

The Alaska court in *Bundrant* ruled in favor of the state with respect to the same constitutional claims as those presented in this federal action. Thus there apparently remains no "adequate remedy at law" in the state system with respect to those constitutional claims. *Huffman v. Pursue,*

(1971); 3 J. Moore, Federal Practice ¶ 15.16[3] (2d ed. 1975).)

Plaintiffs argue, however, that the new state regulatory scheme, adopted June 15, 1974, is "simply a subterfuge and a flagrant violation of the outstanding injunction." *Compare Griffin,* 377 U.S. at 226–227, 84 S.Ct. at 1230. This suggests that the third amended complaint is not a new "cause of action" at all.

Such a suggestion, if accepted, would support the conclusion that "proceedings of substance on the merits [had] taken place in the federal court" prior to the July 15, 1974 filing by the state of its criminal complaint. *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). In that event, *Younger* principles would not prevent this court from entertaining the third amended complaint.

However, I cannot agree with plaintiffs' premise. Scrutiny of the new regulations demonstrates that Alaska has sought to follow the suggestions in our prior opinion, 377 F.Supp. at 441. *See* 5 Alaska Admin.Code §§ 34.005, –.030, –.035, –.085, –.098.

While this new regulatory scheme implements the same purpose as that underlying the regulations whose enforcement we previously enjoined, the means employed here are different. *Compare Hjelle,* 377 F.Supp. at 432–33, *with Bundrant,* 546 P.2d at 533–34; *id.* at 558 (Rabinowitz, J., concurring). Where, as here, the state has made a conscientious effort to tailor its regulations to the language of the prior opinion of this court, there is no "subterfuge" or "flagrant violation" of our prior ruling. Rather, Alaska is engaged here in legitimate legislative experimentation. The situation in *Griffin, supra,* is in stark contrast.

Thus, I would treat the third amended complaint, actually a supplemental pleading, as the equivalent of a new claim challenging the regulations of June 15, 1974.

*Ltd.,* 420 U.S. 592, 601, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). In the absence of an adequate legal remedy, an equity court normally need not stay its hand.

However, the *Younger* doctrine is based not merely upon general equitable principles, but also upon

> . . . an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . . [T]he National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), quoted in *Huffman, supra,* 420 U.S. at 601, 95 S.Ct. 1200.

The Alaska court remanded the cause in *Bundrant* so that "the State may proceed to enforce its crab regulations" against the defendants. 546 P.2d at 556. The criminal trial on the merits is pending.

Federal plaintiffs mount a facial constitutional attack on Alaska's crab regulations and authorizing statutes. Were we to grant either declaratory or injunctive relief, our judgment would necessarily prevent any and all enforcement of those statutes and regulations. Thus, a judgment in favor of any of the federal plaintiffs would preclude the state from prosecuting the parties-defendant in *Bundrant.* Such a result would "unduly interfere with the legitimate activities" of the State of Alaska, and thereby violate the principles announced in *Younger* and its progeny.

For these reasons, I agree that the third amended complaint should be dismissed as to all federal plaintiffs.[4]

---

4. Unlike the majority, I would not rely on an "abstention by stipulation" rationale to dispose of this action. *It is not clear to me that by requesting a stay pending decision in Bundrant* those federal plaintiffs who are *not* state defendants have "unreservedly litigated their federal claims in state court . . . ." (Majority opinion at 600.)