**HEARING AID ASSOCIATION OF KENTUCKY, INC., a Kentucky Corp. et al., Plaintiffs,**

v.

**Robert V. BULLOCK, Individually and in his official capacity as Assistant Deputy Attorney General, Department of Law, Commonwealth of Kentucky and Maurice A. Byrne, Jr., Individually and in his official capacity as Assistant Attorney General, Department of Law, Commonwealth of Kentucky, Defendants.**

**Civ. A. No. 75–30.**

United States District Court,
E. D. Kentucky.

March 10, 1976.

Larry M. Greathouse, Frankfort, Ky., for plaintiffs.

Robert V. Bullock, Maurice A. Byrne, Jr., Asst. Attys. Gen. of Ky., Frankfort, Ky., for defendants.

### MEMORANDUM OPINION

SILER, District Judge.

This case comes before the Court on the motion by the plaintiffs for a preliminary injunction and on the motion by the defendants to dismiss. Plaintiffs here have alleged that the defendants, who were Assistant Attorneys General for the Commonwealth of Kentucky when the matter was filed in this Court on October 14, 1975 (defendant Byrne stated in open court that he is no longer an Assistant Attorney General), have been violating the civil rights of the plaintiffs and the class of persons they represent, that is, all other members of the Hearing Aid Association of Kentucky, Inc., who allegedly have a federal trademark right to the use of "Certified Hearing Aid Audiologist." The plaintiffs allege that the defendants in their capacity as Assistant Attorneys General have, among other

things, forced the defendants to sign "Assurances of Voluntary Compliance" and allowed derogatory news releases to be released to various news media, thus depriving the plaintiffs of property without due process of law and denial of equal protection of the laws. The plaintiffs also allege that the defendants, while acting under color of state authority and outside the limit of their lawful authority, deprived the plaintiffs of property, that is, the use of their trademark, without due process and equal protection of the laws. The plaintiffs also allege that the investigative procedure used by the defendants under KRS 367.240 has interfered with the civil rights of the plaintiffs by attempting to force the plaintiffs as witnesses against themselves, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and that the investigative demands made by the defendants are so broad and uninformatively worded as to deny the plaintiffs' ability to determine their legal rights, in violation of the due process laws of the Fourteenth Amendment to the Constitution. Plaintiffs have asked for a preliminary and permanent injunction enjoining the defendants from continuing efforts to impair the rights of the plaintiffs to the use of the term "Certified Hearing Aid Audiologist" in their lawful business pursuits and asked for compensatory damages in the amount of $10,500.00 and punitive damages in the amount of $30,000.00. The defendants have moved this Court to dismiss this action on the following grounds:

1. The doctrines of abstention and comity should preclude this Court from acting, since the same or a similar matter is pending in the state court system.

2. The plaintiffs have allegedly failed to state a cause of action, inasmuch as the property rights, if any, in the use of the trademark involved cannot be used in a manner as to deceive the public.

3. The defendants have a quasi-judicial immunity which would preclude money damages being obtained against them.

## ABSTENTION AND COMITY

This action was filed in this Court on October 14, 1975. Process in this case was served upon the defendants on October 16, 1975. According to the affidavits filed in the record in this case, it apparently is uncontradicted that the defendant, Maurice A. Byrne, Jr., caused to be filed an action on behalf of the Commonwealth of Kentucky, ex rel. Attorney General Ed W. Hancock against William Ramsey of Louisville on October 16, 1975, in the Jefferson Circuit Court in Louisville, Kentucky; caused a similar suit to be filed against R. E. Conn, one of the plaintiffs herein, on October 20, 1975, in the same Jefferson Circuit Court; and caused the third suit to be filed against Stanley I. Browning, another of the plaintiffs in this case, in the Boyd Circuit Court, Catlettsburg, Kentucky, on October 22, 1975. Although William Ramsey is not a party to this action herein, the attorney for the plaintiffs alleges in his motion for a preliminary injunction that William Ramsey is a member of the class for whom this action was originally brought. Each action apparently alleged that the defendant was engaging in false, misleading, and deceptive conduct in violation of KRS 367.170 by the use of the term "Certified Hearing Aid Audiologist," and requested an injunction restraining and enjoining the defendant and others from directly disseminating or causing the dissemination of any advertisements or making representations by any title or description of service using the words "audiologist," "audiology," or any other words indicating the practice of audiology, for the Court to require the defendants to refund the entire purchase price and any other money paid to the defendant on the basis of these misrepresentations, and to require the defendant to pay a civil penalty in the amount of $2,000.00 for willful violations of KRS 367.170. In these cases, the Attorney General's Office alleged that under Kentucky law, KRS Chapter 334A, the qualifications and licensing procedures for audiologists are set out and the plaintiffs herein (defendants in state court proceedings) do not meet the qualifications and

are not licensed to use the terms such as "audiologist."

No action was taken by the Court in this case until a hearing was held on February 18, 1976. This was due to the fact that one of the Judges of this Court died in February, 1975, which caused the remaining two Judges of the Court to concentrate primarily on criminal cases. It was not until December, 1975, that the judicial vacancy was filled by the induction of the undersigned Judge, so this matter was brought to a hearing at the earliest possible occasion.

In the meantime, the Jefferson Circuit Court on January 13, 1976, issued an opinion and granted a summary judgment in the case of *Commonwealth of Kentucky, ex rel. Ed W. Hancock v. R. E. Carr,* restraining and enjoining R. E. Carr from directly or indirectly advertising or making representations which describe himself or his trade, occupation, practice or service by any title or description or services using the word "audiologist" or any other words indicating the practice of audiology. The Court did not determine whether the defendant in that case should be required to refund the purchase price or to pay civil penalties. In argument before this Court on February 18, 1976, the defendant, Robert V. Bullock, indicated to the Court that another decision should be handed down soon in the case of *Commonwealth of Kentucky v. William Ramsey* by the Jefferson Circuit Court. Since our hearing, that Court has granted summary judgment against Ramsey in case number 207118, enjoining him in a similar fashion as done in *Carr, supra.*

■ In general, federal courts are very reluctant to enjoin proceedings in a state court. See *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Congress has even precluded such an action, except "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. As stated in *Younger v. Harris, supra,* one of the underlying reasons for restraining courts of equity from interfering with matters in state courts is the notion of "comity," that

is, a proper respect for state functions and a belief that the federal government will fare best if the states are left free to perform their own functions. Another term for this is "Our Federalism." In *Younger v. Harris,* it was said that the "normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* at 45, 91 S.Ct. at 751, 27 L.Ed.2d at 676. The test was set in that case that since there is a fundamental policy against federal interference with state criminal prosecutions, even proof of irreparable injury is insufficient unless it is "both great and immediate." *Id.* at 46, 91 S.Ct. at 751, 27 L.Ed.2d at 676. *Accord, Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926). Of course, in that case, the Court did not find any proof of harassment or bad faith on the part of the authorities. In the case at hand, the plaintiffs imply that the defendants were acting in bad faith and were harassing the plaintiffs, but based upon the record at this time, the Court does not find that there is any evidence to support such a conclusion. The defendants were apparently acting on behalf of the Attorney General of the Commonwealth of Kentucky and were performing duties which were conferred upon them by the Kentucky Legislature.

■ There is no question, however, that this Court does have jurisdiction, if it desires to use it, to enjoin state court proceedings under the exception allowed in *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

Later, in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), it was held that the principles of *Younger v. Harris, supra,* apply to a civil case, where the civil case has some relationship to a criminal proceeding. One of the important factors in *Huffman* was that the State was a party to the case in the state court proceeding. As stated in *Huffman,* at least three Courts of Appeals have applied *Younger* when the pending state proceedings were civil in nature and apparently not related at all to a criminal case. See *Duke v. Texas,* 477 F.2d 244 (5th Cir. 1973)

(speaking on campus to protest Southeast Asia War); *Lynch v. Snepp*, 472 F.2d 769 (4th Cir. 1973) (access to public schools); *Cousins v. Wigoda*, 463 F.2d 603 (7th Cir. 1972) (certification of delegates to Democratic National Convention).

However, it was thought that *Younger v. Harris*, as interpreted in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), required that the state proceedings must be pending on the day the federal case is filed, before the Court should decline to consider the matter before it.

As far back as *Taylor v. Taintor*, 83 U.S. 366, 370, 21 L.Ed. 287 (1872), it was stated:

Where a State court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases.

However, in *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), it was held that where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, *Younger v. Harris* applies. The Court indicated that to do otherwise would be to "trivialize the principles of *Younger v. Harris*." *Id.* at 350, 95 S.Ct. at 2292, 45 L.Ed.2d at 239. Based upon the authority cited above, this Court has no problem with determining that the principle of comity applies.

Moreover, the Court should perhaps assert the principle of abstention, in order for the Courts of the Commonwealth of Kentucky to determine whether or not the use of the title "Certified Hearing Aid Audiologist," by the plaintiffs if false, misleading, and deceptive to the public and in violation of the Kentucky Consumer Protection Act, KRS Chapter 367. Of course, there is now an opinion by the Jefferson Circuit Court that there is such a violation, but that is not a decision by an appellate court in Kentucky. Thus, it appears that the rule of abstention from *Reetz v. Bozanich*, 397 U.S.

82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), would apply.

In conclusion, it appears that *Younger v. Harris* applies at least to the plaintiffs Stanley I. Browning and R. E. Conn, since they have similar cases pending in the state court system. Although the other plaintiffs in this case are not alleged to be before a state court (except those who are asserted to be members of a class, but this Court has not yet determined whether it can be maintained as a class action), nevertheless, this Court is of the opinion that the same legal principles would apply in any cases involving any of the rest of the plaintiffs in this case, and, therefore, declines to act under the doctrines of comity and abstention. As this Court stated in *Hyden v. Clark*, 354 F.Supp. 207, 208 (E.D.Ky.1973):

There has been no breakdown in the operation of State Courts, and there is no indication that the State Courts are unable to function timely or with propriety. . . . [D]oubt as to the propriety of Federal Courts enjoining State Courts should be resolved in favor of the State Court proceedings.

In this case, the plaintiffs do not allege that the Kentucky Consumer Protection Act is in violation of the Constitution of the United States and have not asked for a three-judge court pursuant to 28 U.S.C. § 2284. Instead, the plaintiffs have asserted that the defendants have acted beyond the scope of their authority under the Consumer Protection Act, KRS Chapter 367, and, therefore, lose their judicial immunity. However, since there are presently pending three cases in the courts of the Commonwealth of Kentucky, the question as to whether or not the defendants as Assistant Attorneys General have acted beyond their scope of authority under Kentucky law can and should be resolved before any Constitutional questions need be determined.

Admittedly, this Court could take jurisdiction and decide the ancillary state questions, regardless of how it would rule on the Constitutional issue, *Siler v. L. & N.R.R.*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753

(1909), but the wisdom of this is doubted, since here, as stated in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971, 974 (1941):

> [A] federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. . . . The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.

The Court thus follows that reasoning here and declines to determine either questions of state or Constitutional law at this time. It could retain jurisdiction, pending state proceedings, as done in *Railroad Commission v. Pullman, supra,* but under the circumstances the better approach here would be to dismiss, especially since comity is involved and the matter is pending now in the state court system.

Of course, it could be argued that if this Court were to act, it would decide the question as one forum, in a more expeditious manner, rather than having several separate state court decisions. However, the defendants, by an affidavit filed by Maurice A. Byrne, Jr., averred that they had attempted to work out an arrangement with counsel for the plaintiffs to file this as one action in the Franklin Circuit Court, but that counsel for the plaintiffs never did let the defendants know about his decision on that matter. That could have resolved the matter through one forum, but apparently the plaintiffs elected not to do so. Instead, they brought this action to enjoin any and all state proceedings.

An order will be entered this same date sustaining the motion by the defendants to dismiss. However, assuming arguendo that the matter should not have been dismissed, the Court will discuss some of the other matters raised in the memoranda of the parties.

## FAILURE TO STATE A CAUSE OF ACTION

Plaintiffs claim that the term "Certified Hearing Aid Audiologist," is a trademark and have filed suits under the patent jurisdiction of this Court, 15 U.S.C. §§ 1054, 1121, as well as the jurisdiction of this Court under the civil rights laws, 28 U.S.C. §§ 1338, 1343, and 42 U.S.C. § 1983.

■ First, the Court has some doubt as to whether the use of the term "Certified Hearing Aid Audiologist" is a registered trademark for the plaintiffs. Exhibit "A" as filed by the plaintiffs and appended to their pleadings, states that the words, "Certified Hearing Audiologist," are disclaimed apart from the mark. That would seem to indicate that the entire emblem is the subject of a trademark and not the words themselves. However, assuming that it is a trademark registered by the plaintiffs, the law is clear that the registration of a trademark does not create any substantive rights to perpetrate fraud upon the public. Instead, it primarily grants the registrant protection against infringements and unfair competition. See *Armstrong Paint and Varnish Works v. Nu-Enamel Corp.,* 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938).

There is no doubt that even if a trademark is registered, that does not bind this court. *Nancy Ann Storybook Dolls v. Dollcraft Co.,* 197 F.2d 293 (9th Cir. 1952). In addition, the courts have allowed the Federal Trade Commission (FTC) to regulate unfair competition in commerce, even where the business regulated has been using registered trademarks. The FTC may even direct the registrant of the trademark to cease and desist from using it where it is deceptive and misleading. See, *e. g., Jacob Siegel Co. v. FTC,* 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888 (1946). Moreover, other federal agencies may regulate the use of a federal trademark where the name is false or deceptive. See, *e. g., Brougham v. Blanton Mfg. Co.,* 249 U.S. 495, 39 S.Ct. 363, 63 L.Ed. 725 (1919) (Department of Agriculture).

■ Since the registration of the trademark does not give the registrant an

absolute right to its use, it is reasonable to assume that states may regulate the use of fraudulent or deceptive terms in the same manner as do federal agencies. Thus, it was said in *Halter v. Nebraska,* 205 U.S. 34, 40–41, 27 S.Ct. 419, 421, 51 L.Ed. 696, 701 (1907):

> [E]xcept as restrained by its own fundamental law, or by the supreme law of the land, a state possesses all legislative power consistent with a republican form of government; therefore, each state, when not thus restrained, and so far as this court is concerned, may, by legislation, provide not only for the health, morals, and safety of its people, but for the common good, as involved in the well-being, peace, happiness, and prosperity of the people.

The Kentucky Consumer Protection Act is similar in purpose to the Federal Trade Commission Act, *Dare to be Great, Inc. v. Commonwealth,* 511 S.W.2d 224 (Ky.1974), and the Commonwealth of Kentucky should be allowed the greatest latitude within Constitutional restrictions, to regulate commerce within its boundaries. Those who buy goods and services in the market place, whether it be in the urban area of Lexington or Louisville or in the remote hamlets of Kingdom Come or Frakes, have a right to rely upon the General Assembly and the Attorney General to protect them from misleading trade practices, and the defendants should not be precluded from performing their duties in regulating the field of consumer protection so long as they have the legal and Constitutional authority to do so.

Or course, the plaintiffs have asserted that the defendants have acted beyond their scope of authority under Kentucky law to deprive the plaintiffs of property without due process of law and in violation of the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution. In addition, as indicated above, the plaintiffs allege several other Constitutional violations on the part of the defendants.

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, under Rule 12(b)(6), Federal Rules of Civil Procedure, this Court must accept as true the allegations in the complaint, for the purpose of determining the sufficiency of the complaint. See *Brown v. Strickler,* 422 F.2d 1000 (6th Cir. 1970); *L'Orange v. Medical Protective Co.,* 394 F.2d 57 (6th Cir. 1968). Moreover, as stated in *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974):

> The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

In order to dismiss the case, the Court should find that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. See *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This Court does not consider that there would be any set of circumstances under the allegations pleaded in the complaint which would entitle them to relief. Therefore, if the Court were to reach this conclusion, the motion to dismiss would be sustained.

### JUDICIAL IMMUNITY

The defendants have moved to dismiss this matter because there is no action for money damages against the defendants because of the doctrine of judicial immunity due to the fact that they were acting as Assistant Attorneys General when this case arose. At first blush, it would appear that the defendants are entitled to some type of quasi-judicial immunity under the doctrine set down in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, 44 U.S.L. Week 4250 (1976); *Wilhelm v. Turner,* 431 F.2d 177 (8th Cir. 1970); *Kenney v. Fox,* 232 F.2d 288 (6th Cir.), *cert. denied,* 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956). However, the plaintiffs indicate that the defendants have violated the Constitutional rights of the plaintiffs through investigatory acts. If true, then their immunity may be substantially the same as that of police-

men, rather than of judges. See *Imbler v. Pachtman, supra; Dodd v. Spokane County,* 393 F.2d 330 (9th Cir. 1968); *Lewis v. Brautigan,* 227 F.2d 124 (5th Cir. 1955). It may be that further evidence would have to be developed on that subject in order for the Court to rule as to whether or not civil damages were proper in this case.

However, the Court will not need to decide that question, since even if there is quasi-judicial immunity from money damages, there is no question but that this Court would have equity jurisdiction over the defendants for injunctive relief. See, e. g., *Boyd v. Adams,* 513 F.2d 83 (7th Cir. 1975). The cases are replete with instances of equitable actions against state officials in capacities very similar to defendants here. *Younger v. Harris* was such an example. Since the motion to dismiss against the defendants would mean that the entire matter would be dismissed, the Court would decline at this time to dismiss the case against the defendants because of judicial immunity, if it had declined to dismiss the action on either of the other grounds asserted.

An order in accordance with this memorandum opinion will be entered this same date.