## AMOCO OIL COMPANY vs. LLOYD DICKSON.

Middlesex. February 6, 1979. — May 7, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Gasoline Dealers' Agreements. Words,* "Due cause."

General Laws c. 93E, § 5A, which prohibits a supplier from canceling or terminating a marketing agreement with a retail dealer without due cause, does not limit a supplier to terminating an agreement only in the event of the dealer's failure substantially to comply with the agreement. [46-49]

A supplier of petroleum products was not prohibited by G. L. c. 93E, § 5A, from terminating a marketing agreement with a retail dealer upon its making a good faith business judgment, supported by the facts, that the station was insufficiently profitable to it. [49-50]

CIVIL ACTION commenced in the Third District Court of Eastern Middlesex on October 14, 1977.

On appeal to the Superior Court the case was heard by *Mitchell, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*R. K. Gad, III,* for the plaintiff.

*Howard M. Bloom (Stanley M. Cohen* with him) for the defendant.

*Barry Ravech* for Edward Karedes, amicus curiae, submitted a brief.

*Harold Hestnes, Robert W. Mahoney & James L. Quarles, III,* for Cities Service Oil Company, amicus curiae, submitted a brief.

WILKINS, J. The plaintiff (Amoco) is a supplier of petroleum products. The defendant is a dealer engaged in the retail sale of gasoline, oil, and other products at a

gasoline station (the premises) in Arlington. He leased the premises from Amoco for a five-year term commencing November 1, 1976, pursuant to a lease executed on October 13, 1976. As permitted by the terms of the lease, on March 21, 1977, Amoco sent the defendant a notice of termination of the lease, effective September 17, 1977. Amoco commenced this action of summary process to obtain possession of the premises.

The parties have agreed that Amoco terminated the lease "because in its good faith and honest judgment, the station was insufficiently profitable to it." The parties have further agreed that "Amoco's return on its investment in this station, including all of its revenues from this station, both the rent and its margin on gasoline and other products, is less than one percent." There is no claim of any material breach of the lease by the defendant.

Section 5A of G. L. c. 93E, as appearing in St. 1976, c. 64, § 5, provides that a termination or cancellation of "a marketing agreement of any retail dealer *without due cause*" (emphasis supplied) shall be unlawful. The defendant, who is still in possession of the premises, defends against Amoco's claim of a right to possession of the premises solely on the ground that the reasons stated by Amoco for termination of the lease do not constitute "due cause" under G. L. c. 93E, § 5A. He argues that "due cause" in § 5A is limited to dealer breaches and does not include a supplier's business decisions. We conclude that "due cause" is not so limited in its meaning and that Amoco's good faith decision to cease operations at the premises, coupled with the fact that its return on its investment was less than one per cent, constitutes "due cause" permitting the termination of the lease.[1]

---

[1] The issue presented in this case has been and is of concern to many others. The parties and amici have cited lower court decisions in this Commonwealth concerning the right of a supplier to terminate the lease of a dealer, and we are advised of pending cases of the same character. One such case involves the amici curiae who have filed

Amoco commenced this action in the Third District Court of Eastern Middlesex and prevailed. On the defendant's appeal to the Superior Court, judgment was entered for the defendant. The judge ruled that "due cause" in G. L. c. 93E, § 5A, means that "a dealer must have failed to substantially comply with his obligations under the lease or dealer agreement." We granted Amoco's application for direct appellate review.

The development of G. L. c. 93E demonstrates that the narrow construction of the words "due cause" in § 5A urged by the defendant was not intended. As initially enacted by St. 1972, c. 772, § 5 of G. L. c. 93E provided in subsection (*a*) that it would be unlawful to cancel or terminate an agreement "prior to its expiration date unless the dealer has defaulted under any term, condition or obligation set forth in his agreement." If that language were still in effect, Amoco could not cancel or terminate the defendant's lease as it did in this case. Under its 1972 formulation, § 5 provided further, in subsection (*b*), that a supplier could fail to renew a dealer's agreement only "for cause" and that cause "shall include, *but not be limited to,* grounds for cancellation or termination under subsection (*a*)" (emphasis supplied). Plainly, under the 1972 enactment the "cause" for which a supplier could decide not to renew a dealer's agreement included reasons other than dealer default.

Chapter 93E was amended in 1976. St. 1976, c. 64, § 5.[2] A new § 5A made it unlawful for a supplier "to terminate,

---

briefs in this case. Amoco opposes the allowance of Edward Karedes's motion to file a brief amicus curiae because, so it claims, Karedes does not accept the record as he finds it. We agree that an amicus curiae must accept the record as he finds it, but, rather than deny ourselves the benefit of any assistance the Karedes brief might provide, we have determined to allow the motion and to receive the brief, but to consider it only as it applies to the issues in contention between the parties.

[2] The amendment was in effect when the lease in this case was executed.

Congress has undertaken to regulate the relationship between gasoline station dealers and their suppliers as to franchise agreements

cancel or not renew a marketing agreement of any retail dealer without due cause, regardless of the terms or provisions of such marketing agreement." The Legislature thus abandoned any distinction between the reasons justifying a supplier's decision to cancel or terminate a dealer's lease and the reasons justifying a supplier's decision not to renew such a lease. "Due cause" would justify such an action in both instances.[3] The Legislature did not perpetuate the "dealer default" language of the former § 5 as the basis for cancellation, termination, or nonrenewal, but rather adopted the broader requirement of "cause" that was formerly applicable only to a supplier's decision not to renew.[4] With this pattern of statutory development, we construe "due cause" to include reasons other than dealer default among the reasons justifying the cancellation or termination of a dealer's lease or marketing agreement. See *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation*, 363 Mass. 685, 691 (1973); *Raytheon Co.* v. *Director of the Div. of Employment Security*, 344 Mass. 369, 371-372 (1962).

This construction of "due cause" is consistent with the meaning attributed to those or similar words in other contexts. As relevant to the determination whether a distributor has "good cause" for canceling, terminating, or refusing to renew a motor vehicle dealer's agreement or franchise under G. L. c. 93B, § 4 (3) (*e*) (4), as appearing in St. 1977, c. 717, § 3, the Legislature listed a number of considerations in addition to dealer default. In *G & M Employment Serv., Inc.* v. *Commonwealth*, 358 Mass. 430,

---

entered into or renewed (or not renewed) on or after June 19, 1978. 15 U.S.C. § 2802 (a) (1) (1978). Nonrenewal is treated differently from termination (*id.* [b] [1] [B]), and nonrenewal for valid business reasons is allowed (*id.* [b] [3] [D]). State law must conform to Federal requirements. *Id.* at § 2806.

[3] This consolidation eliminated the incentive in former § 5 for suppliers to execute only short-term leases.

[4] We attribute no particular significance to the change from "cause" in former § 5 to "due cause" in § 5A.

435 (1970), we defined "just cause," in the context of a statute regulating employment agencies, to include not only an employee's fault or misconduct but also "grounds for discharge reasonably related, in the employer's honest judgment, to the needs of his business." We added that "[d]ischarge for a 'just cause' is to be contrasted with discharge on unreasonable grounds or arbitrarily, capriciously, or in bad faith." *Id.* Other opinions have read the words "just cause" in a statute to include circumstances not involving fault, error, or criticism of any individual. See *Dooling* v. *Fire Comm'r of Malden*, 309 Mass. 156, 162 (1941) ("reasons of economy constitute just cause" for abolishing a position); *Gardner* v. *Lowell*, 221 Mass. 150, 153-154 (1915) (good faith determination to abolish position is "just cause" for discharge of an employee); *Nutter* v. *School Comm. of Lowell*, 5 Mass. App. Ct. 77, 79-80 (1977) ("good cause" for terminating a tenured teacher includes the good faith abolition of a position for reasons of economy). See also *Karcz* v. *Luther Mfg. Co.*, 338 Mass. 313, 319-320 (1959), similarly construing "just cause" in a private employment agreement. Compare *Mayo* v. *Boston Rent Control Adm'r*, 365 Mass. 575, 578-579 (1974) (right of a landlord to evict tenants from rent controlled housing for "just cause," which had to be a reason "not in conflict with the provisions and purposes of . . . [the rent control] act," did not include the purpose of optionally upgrading apartments by renovating the premises), with *Zussman* v. *Rent Control Bd. of Brookline*, 367 Mass. 561, 566-567 (1975) (unit-by-unit conversion of rent-controlled apartments into condominiums was "just cause" for eviction under rent control act).

The defendant, as did the judge below, relies on *Shell Oil Co.* v. *Marinello*, 63 N.J. 402 (1973), a decision not particularly instructive on the issue before us. The court in the *Marinello* case stated that the public policy of New Jersey prevented an oil company from terminating a gasoline dealer's franchise except for good cause (*id.* at 410-411), and, relying on a recent statute not applicable

to the franchise agreement before it, the court concluded that, as the statute provided, good cause meant only a "failure by the franchisee to substantially comply with the requirements imposed on him by the franchise." *Id.* at 409. That case did not involve an attempt, as here, to discontinue a franchise solely because of an honest, good faith determination that the station was insufficiently profitable. The result was based on the court's determination of public policy, which it accepted as expressed in the narrow definition of "good cause" contained in the inapplicable New Jersey statute.

The defendant argues that G. L. c. 93E was obviously enacted to provide protection to gasoline station operators against oil company decisions that would destroy their businesses. We agree that the Legislature perceived a need for protection of gasoline station operators, most of whom do not own their own stations but rather lease them from a supplier from whom they are obligated to purchase gasoline, oil, and other items. Chapter 93E is one of a number of statutes enacted in this Commonwealth in recent years to redress the economic imbalance in particular relationships, mostly involving consumers. See *Commonwealth* v. *DeCotis*, 366 Mass. 234, 238 (1974).[5]

We do not accept the defendant's further contention, however, that § 5A must be read to permit termination of a gasoline station dealer's lease only in the event of the

---

[5] The franchise relationship in the oil industry has been a subject of much concern and legislation throughout the country in recent years. See generally H. Brown, Franchising — Realities and Remedies (2d ed. 1978); 15A G. Glickman, Business Organizations, Franchising c. 13 (1978); Brown & Cohen, Franchise Equities, 63 Mass. L. Rev. 109, 113-114 (1978). The inequality of bargaining power between oil companies and their franchisees has received considerable attention. See, e.g., *FTC* v. *Texaco Inc.*, 393 U.S. 223 (1968); *Atlantic Ref. Co.* v. *FTC*, 381 U.S. 357, rehearing denied, 382 U.S. 873 (1965); *Shell Oil Co.* v. *FTC*, 360 F.2d 470 (5th Cir. 1966), cert. denied, 385 U.S. 1002 (1967); Problems of Small Retail Petroleum Marketers: A Report of the Subcommittee on Energy and Environment of the Committee on Small Business of the House of Representatives, H. R. Rep. No. 94-1762, 94th Cong., 2d Sess. (1976). See note 2, *supra.*

dealer's default under the terms of his agreement. The words "due cause" simply do not have such a limited meaning, for the reasons we have indicated. In our recognition of the statutory purpose to eliminate the historical economic disadvantage of gasoline station dealers in relation to oil companies, we should not assume a legislative intention to overcompensate and thus to generate inequities against suppliers. See *Mechanics Nat'l Bank* v. *Killeen*, 377 Mass. 100, 111-112 (1979). A construction of § 5A that would permit a supplier to terminate a gasoline station dealer's lease only if the dealer violated the agreement, regardless of any other circumstances, could impose a substantial hardship on the supplier. It is simply not clear that in all instances the public interest would be served by requiring suppliers to continue marketing agreements with dealers whose business operations had been and would be chronically and irremediably unprofitable to the suppliers.

The defendant appears to concede that, if "due cause" in § 5A is not to be read as restrictively as he contends, Amoco's reasons for terminating the lease are sufficient. The parties stipulated that the lease was terminated because of Amoco's "good faith and honest judgment [that] the station was insufficiently profitable to it." We need not consider whether a good faith business judgment which, on inspection, is shown not to be supported by the facts, would constitute "due cause." Here, the parties have further stipulated that Amoco's return on its entire investment in the premises is less than one per cent. We regard this fact as sufficient to show that Amoco's good faith business judgment was reasonably founded.

The judgment for the defendant is reversed, and judgment shall be entered awarding possession of the premises to the plaintiff.

*So ordered.*