GETTY PETROLEUM CORP., Plaintiff,

v.

L. Scott HARSHBARGER, as he is the Attorney General of the Commonwealth of Massachusetts, Defendant.

Civ. A. No. 92–12261–T.

United States District Court,
D. Massachusetts.

Dec. 2, 1992.

Chester A. Janiak, Gary William Smith, Burns & Levinson, Boston, MA, for plaintiff.

William T. Matlack, Asst. Atty. Gen., Thomas M. Alpert, Office of Atty. Gen., Public Protection Bureau, Boston, MA, for defendant.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiff, Getty Petroleum Corporation ("Getty"), seeks to enjoin state enforcement of M.G.L. c. 93E, § 4A(a),[1] on the grounds that its provisions prevent oil companies from negotiating operating hours with their Massachusetts dealers, and that such proscription violates the federal Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801–2806.[2] At issue is a Motion to Dismiss on behalf of the defendant, the Attorney General of the Commonwealth.

### I

### *Procedural History*

On September 14, 1992, the Attorney General sent Getty a demand letter, pursuant to M.G.L. c. 93E, § 7A, informing it that the Commonwealth was planning to commence suit against the company for violations of Chapter 93E.[3] This letter also stated, as required by Chapter 93A, that the Commonwealth would not bring suit for at least five days, in order to encourage negotiations between the parties. Before the end of the five-day period, Getty filed suit in this court to enjoin the Attorney General from proceeding with his state court suit. On September 23, 1992, three business days after Getty filed its federal complaint, the Attorney General filed suit against Getty in Suffolk County Superior Court, Civil Action No. 92–5855. At that

time, the only proceedings that had taken place in this court were the filing and service of Getty's complaint and the scheduling of the preliminary injunction hearing.

### II

### *The Statutes*

Massachusetts General Law Chapter 93E, Section 4A(a), prohibits any agreement between an oil company and dealer that specifies a minimum number of hours of operation per day or specific days of operation per week. The PMPA, 15 U.S.C. § 2802(b)(2)(A), provides that an oil company may terminate or not renew its relationship with a dealer, if the dealer fails to comply with any provision of an agreement that is "reasonable and of material significance" to the relationship. Getty claims that Chapter 93E is preempted by the PMPA, and that penalties which the Attorney General seeks to impose on Getty under Chapter 93A for violation of Chapter 93E are violative of Due Process as vague and unreasonable. The Attorney General denies Getty's claims, and asserts that this court should abstain from rendering any opinion on this matter due to the state court proceedings involving both parties which have been commenced in state court.

### III

### *Abstention*

■ Abstention is a judge-made doctrine under which federal courts, in the exercise of their discretion, may abstain from exercising jurisdiction out of respect for the independence of state governments and to

---

1. M.G.L. c. 93E, § 4A, reads in pertinent part, Every marketing agreement between a supplier and a retail dealer shall be subject to the following non-waiverable provisions, whether or not they are expressly set forth in the agreement: (a) No agreement between a retail dealer and a supplier shall require a retail dealer to keep his station open for business any specified number of hours per day or days per week.
   M.G.L. c. 93E, § 4A.

2. The PMPA states in relevant part,
   [T]he following are grounds for termination of a franchise or nonrenewal of a franchise

relationship: (A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship....
15 U.S.C. § 2802(b)(2).

3. Getty had previously received a demand letter from the Attorney General on February 24, 1992. Settlement negotiations ensued. The demand letter that precipitated this action was sent only after these negotiations stalled. Matlack Aff. ¶ 3.

encourage "the smooth working of the federal judiciary." *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941).

### On–Going State Judicial Proceedings

■ The Supreme Court has held that when state proceedings "are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of *substance* on the merits have taken place in the federal court, the principles of [abstention] should apply in full force." *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975) (emphasis added). When, for example, a state case was initiated while "the federal litigation was in an embryonic stage and no contested matter had been decided," abstention applied. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975). In *Hicks*, the state court proceedings began after the federal complaint had been filed and served. *Hicks*, 422 U.S. at 349, 95 S.Ct. at 2292. In *Doran*, state court proceedings began after the federal complaint was filed and after the federal court denied a temporary restraining order. *Doran*, 422 U.S. at 924–25, 95 S.Ct. at 2564–65. By contrast, where a preliminary injunction had been granted before the state court complaint was filed, abstention did not apply. *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984).

In the present matter, the state court case was commenced after the federal court case was filed and served and a preliminary injunction hearing scheduled, but before any other action, including issuance or denial of a preliminary injunction, had taken place. Getty contends that the scheduling of the hearing for its motion for a preliminary injunction is the type of proceeding of substance that fits squarely within the exception to abstention set forth in *Midkiff.* This court disagrees. Because this court finds that no significant activity occurred in the federal case prior to the

filing of the state court action, the prohibition against abstention set forth in *Midkiff* does not apply to this case. Accordingly, this court finds that the timing requirements of *Hicks* and *Doran* permit abstention in this case.

■ An issue remains, however, as to whether abstention is appropriate in this case. The Supreme Court has emphasized on numerous occasions that abstention from jurisdiction is the exception, not the rule, and that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Nevertheless, there are a few classes of cases in which a federal court should decline to exercise that jurisdiction in favor of abstention. *Sun Ref. & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir.1990). Two of the most important abstention doctrines that have evolved are:

(1) *Younger*-type abstention,[4] which is used to avoid hearing constitutional challenges to state action where federal action is regarded as an improper intrusion onto the right of a state to enforce its own laws in its own courts, and

(2) *Pullman*-type abstention,[5] which is used to avoid decision of a federal constitutional question where the case may be disposed of on questions of state law.

*See* 17 Charles A. Wright, *et al., Federal Practice and Procedure* § 4241 at 28, § 4251 at 180 (2d ed. 1988).

### A. *Younger* Abstention

■ In Count I, Getty complains that Chapter 93E is preempted by the PMPA. The Attorney General rejects this argument and asserts that, under *Younger*, the issue of preemption is best left for resolution by the Suffolk County Superior Court. The *Younger* doctrine requires a court to abstain from exercising jurisdiction over

---

**4.** *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**5.** *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

ongoing state proceedings that satisfy three conditions:

(1) First, the state proceeding is judicial (as opposed to legislative) in nature.

(2) Second, the state proceeding implicates important state interests.

(3) And third, there exists an adequate opportunity in the state proceeding to raise constitutional challenges.

*Middlesex Ethics Comm'n v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

This court finds that the case filed in Suffolk County Superior Court meets the first requirement of the *Middlesex Ethics Comm'n* test, in that the state court proceedings are clearly judicial in nature.

The court's consideration of the second requirement is guided by the Supreme Court's recent decision in *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 364, 109 S.Ct. 2506, 2515–16, 105 L.Ed.2d 298 (1989) ("*NOPSI*"). There, the Court held that the presence of a preemption claim should not affect consideration as to whether important state interests are implicated. "[W]hen we inquire into the substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the *outcome* of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what we look to is the importance of the generic proceedings to the state." *Id.* at 365, 109 S.Ct. at 2516 (emphasis in original). The Court disagreed with the plaintiff's argument in *NOPSI* suggesting that a district court presented with a preemption request "should take a quick look at the merits; and if upon that look the claim appears substantial, the court should endeavor to resolve it." *Id.* at 364–65, 109 S.Ct. at 2516 ("We disagree.").

Applying the teachings of *NOPSI,* it is clear that the proceedings in the state case are very important to Massachusetts. Indeed, the Commonwealth has a substantial interest in enforcing the group of statutes that includes Chapters 93E and 93A. The Supreme Judicial Court has held that both laws are among the "number of statutes enacted in this Commonwealth in recent years to redress the economic imbalance in particular relationships...." *Amoco Oil Co. v. Dickson,* 378 Mass. 44, 49, 389 N.E.2d 406, 409 (1979) (c. 93E); *Commonwealth v. DeCotis,* 366 Mass. 234, 238, 316 N.E.2d 748, 752 (1974) (c. 93A). In addition, state efforts to enforce other civil statutes designed to redress economic imbalances have regularly been held to qualify for *Younger* abstention. *See, e.g., Hearing Aid Ass'n v. Bullock,* 413 F.Supp. 1032 (E.D.Ky.1976) (consumer protection); *Temple of Lost Sheep, Inc. v. Abrams,* 761 F.Supp. 237 (E.D.N.Y.1989) (prevention of charitable fraud). The Commonwealth's efforts here similarly qualify. Chapter 93E has also been held to be a legislative effort to protect franchised gasoline operators, while at the same time not generating inequities against suppliers. *Amoco,* 378 Mass. at 49–50, 389 N.E.2d at 409–10. Such efforts to maintain state industries have also been held to justify *Younger* abstention. *See H.P. Hood, Inc. v. Commissioner of Agric., Food, and Rural Resources,* 764 F.Supp. 662, 670 (D.Me.1991) ("maintenance of a healthy dairy industry clearly implicates an important state interest").

The state court case also satisfies the third requirement, in that it provides Getty with an adequate opportunity to raise its federal constitutional challenges. Here, as Judge Young recently stated in granting a motion to dismiss based on *Younger,* "it cannot be doubted that the courts of the Commonwealth ... will give federal constitutional issues, *including preemption,* the closest scrutiny." *Brotherhood of Locomotive Eng'rs. v. Massachusetts Comm'n against Discrimination,* 695 F.Supp. 1321, 1323 (D.Mass.1988) (Young, J.) (emphasis added). Accordingly, this court abstains from exercising jurisdiction over Count I under *Younger.*

## B. *Pullman* Abstention

■ In Count II, Getty complains that the statutory basis for imposing penalties through Chapter 93A for violations of Chapter 93E "is unreasonably vague" and,

therefore, violates federal and state Due Process protections. The Attorney General contends that this type of analysis is best left to a state court pursuant to the *Pullman* doctrine.

There are three prerequisites to *Pullman* abstention.

(1) First, state law must be uncertain.

(2) Second, resolution of the federal constitutional issue must depend upon the interpretation of the unclear state law.

(3) And third, state law must be susceptible to an interpretation that would avoid or modify the federal issue.

*See Vinyard v. King,* 655 F.2d 1016, 1018 (10th Cir.1981) (quoting *D'Iorio v. County of Delaware,* 592 F.2d 681, 686 (3d Cir. 1978)).

This court holds that Count II is predicated on the assumption that state law is uncertain, a proposition that does not seem to be in serious dispute by the fact that Getty describes the application of the penalty provisions of Chapter 93A to Chapter 93E violations as at best "tortured." Getty's Mem.Supp.Prel.Inj. at 17.

Second, resolution of the federal issue will necessarily depend upon the resolution of the state law issue. There will be no need at all for a ruling on federal constitutional law if, for example, the state court accepts Getty's arguments that the proper construction of Chapter 93E precludes imposition of penalties.

Finally, the state law is susceptible to an interpretation that would avoid federal constitutional questions altogether. For example, the state court could construe Chapter 93A as providing an independent basis for imposition of penalties, regardless of the scope of Chapter 93E.

## IV

### *Retention of the Case*

█ It is the better practice under *Pullman*, in a case raising a federal constitutional question, to retain jurisdiction rather than to dismiss the case entirely. *Zwickler v. Koota,* 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 393 n. 4, 19 L.Ed.2d 444 (1967). Ac-

cordingly, this court will retain jurisdiction of this case for final disposition pending resolution of the concurrent state court proceedings. The parties shall advise the court of the status of the state court proceedings on a quarterly basis, as set out below.

## V

### *Conclusion*

For all the foregoing reasons, the Motion of the Attorney General to Dismiss is hereby GRANTED IN PART AND DENIED IN PART as follows:

A. Plaintiffs' preemption claim is hereby dismissed;

B. The court abstains from deciding upon the remaining claim;

C. The court retains jurisdiction over the case for final disposition pending resolution of the concurrent state court proceedings;

D. The parties shall submit to the court's chambers a joint status report in the case every three months beginning December 21, 1992, which shall inform the court of the status of the state court proceedings. The report shall be in the form of a letter to the court, shall be no longer than three (3) typewritten pages and shall be signed by counsel for both parties. After reviewing the letters, the court will have them placed in the file maintained by the court clerk; and

E. This case is administratively closed, to be reopened by application of the parties upon the resolution of the concurrent state court proceedings.