The CORPUS CHRISTI PEOPLES' BAPTIST CHURCH, INC. et al., Plaintiffs,

v.

TEXAS DEPARTMENT OF HUMAN RESOURCES et al., Defendants.

Civ. A. No. L–79–65.

United States District Court,
S. D. of Texas,
Laredo Division.

Nov. 21, 1979.

On Motion for Reconsideration and Injunction Dec. 11, 1979.

William Bentley Ball, Ball & Skelly, Harrisburg, Pa., Ann E. Coover, Corpus Christi, Tex., for plaintiffs.

David H. Young, Austin, Tex., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KAZEN, District Judge.

As will be more fully detailed below, the instant suit was originally filed asking this Court to declare unconstitutional a state statute and to enjoin the attempted enforcement of same. Shortly after this suit was filed, the State of Texas sued some of the federal plaintiffs in state district court seeking to enforce the precise state statute in question. This prompted the Plaintiffs to counter with a Motion for Preliminary Injunction, asking the Court to restrain the State of Texas from prosecuting the state case. A hearing was held on November 2, 1979, at which time the Court considered written and oral arguments on the legal issues involved and also heard sworn testimony from the Plaintiffs on the merits of their constitutional claim. These Findings of Fact and Conclusions of Law are prepared pursuant to Rule 52, Federal Rules of Civil Procedure.

### FINDINGS OF FACT

1. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1985, to enjoin the enforcement of the Human Resources Code, Chapter 842, ch. 42, 1979 Tex. Sess. Law Serv. (the Licensing Act) on the grounds that the Act is unconstitutional as applied to them.

2. Plaintiffs allege that the enforcement of the Act is violative of their rights protected by the First, Fifth, Ninth, and Fourteenth Amendments.

3. The Plaintiffs are the Corpus Christi Peoples' Baptist Church, Inc. ("the Church"), certain staff members employed by the Church at child-care homes which it owns and operates, certain children presently residing in the homes, and certain parents of children residing in the homes, all of whom allege that their individual constitutional rights will be violated by the enforcement of the act. The two homes in question here are the Rebekah Home for Girls in Corpus Christi, Texas, and the Anchor Home for Boys in Zapata, Texas.

4. The Defendants are the Texas Department of Human Resources, charged with the responsibility for licensing and regulating child-care facilities, its Chairman of the Board, other members of the Board, the Commissioner of the Department, the Director of Institutional Licensing, the Governor of Texas, the Attorney General of the State, and the Secretary of State.

5. There has been prior litigation involving several of these parties in a somewhat related context. In 1976, the State of Tex-

as, in Cause No. 248,199 before the 126th Judicial District Court, Travis County, Texas, filed suit to enforce the Licensing Act's predecessor, Tex.Rev.Civ.Stat.Ann. art. 695a–3 (Vernon Supp.1976). At that time, the same homes in question here were owned and being operated by Roloff Evangelistic Enterprises, Inc. ("Enterprises"). The district court enjoined Enterprises from operating the homes without a license. The Texas Court of Civil Appeals affirmed the lower court's ruling. *Roloff Evangelistic Enterprises, Inc. v. The State of Texas*, 556 S.W.2d 856 (Tex.Civ.App.—Austin, 1977, writ ref'd n. r. e.). The Supreme Court of Texas refused appellant's writ of error, finding no reversible error. Enterprises then appealed to the United States Supreme Court which dismissed the cause for want of a substantial federal question. 439 U.S. 803, 99 S.Ct. 58, 58 L.Ed.2d 96 (1978).

6. On June 11, 1979, a suit was filed in the United States District Court for the Southern District of Texas, Corpus Christi Division, seeking a temporary restraining order to prevent the closing of the childcare homes in question. The suit, Cause No. C–79–78, was filed by two sets of parents of minor children (one set being Ralph Peters and wife, Jacqueline Peters, who are also plaintiffs in the present suit) as well as the Peoples' Church (unincorporated predecessor of the Church in the present case), claiming essentially that if the child-care facilities in question were closed as a result of the litigation successfully concluded against Enterprises, their own individual constitutional rights, particularly First Amendment rights, would be violated. By order dated June 13, 1979, the Hon. Owen D. Cox dismissed the case, holding that he should not interfere with any state court proceedings relative to the basic issues raised before him. The record in the present case contains no evidence as to exactly what state court proceedings were in progress at that time but apparently the same or similar plaintiffs as in C–79–78, *supra*, had sought a state court injunction to prevent the closing of the homes on grounds similar to those set forth in C–79–78. At any rate, the order of Judge Cox

was appealed and was heard by Hon. Thomas Gibbs Gee of the Fifth Circuit Court of Appeals on June 19, 1979. Judge Gee entered an order after hearing oral argument in chambers and declined to exercise "whatever powers are vested in me in connection with this Motion", citing *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994, (1979). The order was without prejudice to any further proceedings before the entire Court of Appeals. Apparently, those plaintiffs made no further effort to go before the Fifth Circuit. Instead, the same plaintiffs filed a new suit in United States District Court in Corpus Christi, Cause No. C–79–81, reurging their cause before Judge Cox, contending that they had now exhausted their state remedies and therefore, federal litigation would be appropriate. By order dated June 20, 1979, Judge Cox dismissed the complaint on the grounds that plaintiffs had failed to allege a substantial federal question, citing *Roloff Evangelistic Enterprises, Inc. v. The State of Texas*, *supra*, Finding No. 5.

7. Meanwhile, in between the two filings in federal court in Corpus Christi, Texas, Ralph and Jacqueline Peters, the Peoples' Church and Harmon Oxford, the alleged child-care supervisor at the Anchor Home for Boys in Zapata, filed suit in this Court, asserting essentially the identical claims set forth in the Corpus Christi case. The case before this Court was Cause No. L–79–37. (As a matter of venue, the Rebekah Home for Girls is physically located in the Corpus Christi Division of the Southern District of Texas while the Anchor Home for Boys in Zapata, Texas is located in the Laredo Division). This Court declined to issue a temporary restraining order without notice because of the pending state court case, the same proceeding which had caused Judge Cox to stay his hand earlier that week. Later, on August 16, 1979, this Court granted without opposition, a motion to dismiss filed by the Texas Department of Human Resources on the basis that the Anchor Home had since been closed and therefore the issue was moot and also because of res judicata, citing the *Ro-*

*loff Evangelistic Enterprises, Inc.* case. (See Finding No. 5).

8. The present suit was filed by the Plaintiffs on October 5, 1979. The State of Texas, on October 11, 1979, filed suit in 200th Judicial District Court, Travis County, Texas, in Cause No. 297,248, seeking to enforce the requirements of the Licensing Act. Included among the defendants in the state case are Enterprises and the Church. The suit is presently pending. In its original petition, the State labels the suit as a "successor" to Cause No. 248,199. (See Finding No. 5).

9. On October 15, 1979, the Plaintiffs filed in this Court their Motion for Preliminary Injunction to enjoin that state court proceeding.

10. By way of factual background, Lester Roloff founded the Roloff Evangelistic Enterprises organization in 1951. The Peoples' Church was founded by Roloff in 1969 as an unincorporated religious society. On August 29, 1979, it was incorporated as the Corpus Christi Peoples' Baptist Church, Inc. The Rebekah Home for Girls in Corpus Christi, Texas, and the Anchor Home for Boys in Zapata, Texas, both came into being in 1967. On or about September 13, 1979, title to these homes was transferred from Roloff Evangelistic Enterprises to the Corpus Christi Peoples' Baptist Church, Inc. Roloff Evangelistic Enterprises and the Corpus Christi Peoples' Baptist Church are both non-profit religious organizations and have separate trustees. Lester Roloff is the pastor of the Church and the President of Enterprises.

11. The Church is presently the owner of all the assets, real and personal, of the Rebekah Home for Girls and the Anchor Home for Boys.

12. The Defendants contend that the Rebekah Home for Girls and the Anchor Home for Boys, being child-care facilities, cannot operate without a state-issued license.

13. The Church contends that because religion is so pervasive in the handling of the children at its homes, it is impossible to operate under state license. The contention is that licensing requirements directly conflict with the religious dictates of the Church, not only as a general principle but also in several particular applications.

14. There is no reason to doubt that the Peoples' Church is a validly established church and there is no contrary contention by the State.

15. Additionally, there is no evidence of child abuse by the homes' employees. The State does not even contend that the children have been abused in the Church's homes. Indeed, the evidence shows that the corrective measures employed by the homes have met with some degree of success.

16. Although the Church contends that licensing under the Human Resources Code is, *per se*, a violation of its free exercise rights, it has no objection to sanitation and fire inspections. In fact, the evidence shows that the Church and its homes have received Health Department permits and the State's Fire Marshal's approval.

17. Most of the testimony was to the effect that the children in these homes were problem children sent there as a last resort and that most have been "saved" in the homes through religious instruction. All of the children, parents and staff members who testified felt that they would be irreparably harmed if the homes were closed by the State.

### CONCLUSIONS OF LAW

Based upon testimony presented at the hearing on Plaintiffs' Motion for a Preliminary Injunction, this case on the merits seems to present a challenging and potentially serious federal constitutional question. This is particularly true with respect to Plaintiff Church, considering decisions by the United States Supreme Court construing the "establishment" clause of the First Amendment, including *Walz v. Tax Commission,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) and most recently, the case of *N.L. R.B. v. Catholic Bishop,* 440 U.S. 490, 99

**1106**

S.Ct. 1313, 59 L.Ed.2d 533 (1979). This Court is not free to reach the merits of the controversy, however, without first considering Defendants' Motion to Dismiss, particularly as it invokes the doctrine of abstention.

It has been suggested that there are at least four types of abstentions.[1] The type invoked here has been characterized as a variant of *Burford*-type abstention[2] which has developed a life of its own under the rubric of "Our Federalism".[3] This particular abstention doctrine was first announced as such in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), where the Supreme Court held that federal courts should not enjoin a pending state criminal prosecution except under certain narrowly defined "extraordinary circumstances".

In 1975, the Supreme Court extended the *Younger* doctrine to state civil proceedings, over a vigorous dissent by Justice Brennan. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). One of the cases cited by the Supreme Court in making this extension was *Duke v. Texas,* 477 F.2d 244 (5th Cir. 1973), where the Fifth Circuit held that applications of the *Younger* principles should not depend upon labels such as "civil" or "criminal". The extension of the *Younger* doctrine to civil cases was more clearly defined by the Supreme Court during its 1976 term in the cases of *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) and *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). These two decisions prompted one leading commentator to conclude:

> [The *Younger* principles] now apply well beyond the quasi-criminal state proceedings that were involved in *Huffman.* The *Younger* rules reach to any civil enforcement action brought by the state in its sovereign capacity and they reach even to wholly private litigation to the extent that the state, as in contempt, has

an interest in vindicating the regular operation of its judicial system.[4]

The most recent case applying *Younger* principles to civil litigation was decided just several months ago. *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

In written briefs and oral argument before the Court, the Plaintiffs have set forth several reasons why the *Younger* doctrine should not be invoked in this case. These reasons, which will hereafter be discussed separately, are as follows:

(1) The "Anti-Injunction Act"[5] does not apply to civil rights actions filed under 42 U.S.C. § 1983.

(2) The instant federal suit was filed before the pending state suit and therefore *Younger* does not or should not apply.

(3) The *Younger* doctrine should not apply to a First Amendment case or at least should be applied with some reluctance in that area.

(4) While the *Younger* doctrine has been extended to pending state civil cases, nevertheless, its application is limited to civil cases which are "quasi-criminal" in nature or closely related to the enforcement of criminal statutes and the present case does not fit that category.

### THE ANTI-INJUNCTION ACT

It is clear that 42 U.S.C. § 1983 is an Act of Congress that falls within the "expressly authorized" exception of the Anti-Injunction Act. *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). The holding in that case, however, was clearly limited to the conclusion that the district court erred in deciding that it was "absolutely without power" to issue an injunction because of Section 2283. The Court was careful to note that, "we do not question or qualify in any way the princi-

---

1. C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4241.

2. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

3. C. Wright, *supra,* § 4241 at p. 446.

4. *Id.,* § 4254 at p. 574.

5. 28 U.S.C. § 2283.

ples of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding", specifically citing *Younger v. Harris, supra.* 407 U.S. at 243, 92 S.Ct. at 2162. This distinction was made crystal clear by Chief Justice Burger in his concurring opinion, joined by Justices White and Blackmun, when he noted that upon remand of the case, the district court should first consider whether to apply *Younger* principles before reaching the merits of the case. 407 U.S. at 244, 92 S.Ct. at 2163 (Burger, C.J., concurring). Thus, although the Anti-Injunction Act is not an obstacle in the present case, the Court must nevertheless reach the *Younger* issue before being able to proceed to the merits of the case.

### TIME OF FILING STATE SUIT

As earlier indicated, it is undisputed that the present federal suit was filed on October 5, 1979. The pending state case was filed in the 200th Judicial District Court of Travis County, Texas, by the State of Texas, as Plaintiff, on October 11, 1979. This in turn prompted Plaintiffs to file their Motion for Preliminary Injunction in federal court, specifically asking this Court to enjoin the State of Texas from proceeding in the state case. In *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the Supreme Court clearly stated that the applicability of *Younger* did not depend on the state criminal proceedings being pending on the day that the federal case was filed. The Court expressly held that:

> "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force.

422 U.S. at 349, 95 S.Ct. at 2292.

Six days later, in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the Supreme Court held that where

the state criminal complaint was issued against the federal plaintiff after the federal suit had been filed but at a time while "the federal litigation was in an embryonic stage and no contested matter had been decided", the case was "squarely governed by *Younger*". 422 U.S. at 929, 95 S.Ct. at 2566.

While both *Hicks* and *Doran* involved pending state criminal cases, they are nevertheless clearly-engrafted branches on the *Younger* tree. The tree has now grown into the area of pending civil cases, and there is no reason to believe that it has done so without those same branches. Other federal courts have had no difficulty applying the *Hicks* principle to pending civil cases.[6]

Plaintiffs suggested during oral argument that the filing of the state suit was done deliberately to strip this Court of jurisdiction and that the Court should find such conduct offensive. Even assuming such is the case, it is nothing more than the precise result predicted by the four dissenters in *Hicks* when they characterized the majority opinion as "an open invitation to state officials to institute state proceedings in order to defeat federal jurisdiction." 422 U.S. at 357, 95 S.Ct. at 2296. That prediction, here fulfilled, obviously did not command a majority of the Court and therefore can be of little use to these Plaintiffs. In this case, clearly no proceedings of any substance had taken place prior to the filing of the state action on October 11, 1979. Indeed, no proceedings of any kind had taken place other than the filing of Plaintiffs' Original Complaint. Accordingly, the Court concludes that when it heard this case on November 2, 1979, for the purpose of considering Plaintiffs' request for a preliminary injunction, there was a "pending state case" as contemplated by the *Younger* doctrine.

### YOUNGER AND THE FIRST AMENDMENT

Plaintiffs cite *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752

---

6. E. g., *Louisville Area Inter-Faith Com. v. Nottingham Liquors, Ltd.,* 542 F.2d 652 (6th Cir. 1976); *Hearing Aid Ass'n of Kentucky, Inc. v. Bullock,* 413 F.Supp. 1032 (E.D.Ky.1976).

(1977), for the proposition that the *Younger* doctrine is somehow less applicable in First Amendment cases. This reliance is misplaced. The essence of *Wooley* was that *Younger* did not apply because there were no pending state criminal proceedings. The court was careful to note that the Plaintiffs were seeking "only to be free from prosecutions for future violations of the same statutes" and were in no way trying to "annul the results of a state trial", nor seek anything other than prospective relief. 430 U.S. at 711, 97 S.Ct. at 1433. This distinction was recently explained by the Fifth Circuit in *Ealy v. Littlejohn*, 569 F.2d 219 (5th Cir. 1978), where the court cited *Wooley* for the proposition that *Younger* principles "are not automatically triggered when injunctive relief against future prosecutions is sought" and that *Younger* does not bar federal intervention when there is no "interruption of ongoing state criminal proceedings". 569 F.2d at 232. As early as 1973, the Fifth Circuit held that *Younger* principles fully apply "even where the exercise of First Amendment rights is involved". *Duke v. State of Texas*, 477 F.2d 244, 248 (5th Cir. 1973).

There are clearly defined exceptions to the *Younger* doctrine. These include bad faith prosecution, harassment, and attempts to invoke flagrantly and patently unconstitutional statutes, but these exceptions are to be construed "very narrowly" and invoked in "extraordinary circumstances". *Younger v. Harris*, 401 U.S. 37, 53–54, 91 S.Ct. 746, at 754–55 (1971); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200 at 1211 (1975); *Trainor v. Hernandez*, 431 U.S. 434, 446, 97 S.Ct. 1911 at 1919, 1977. Plaintiffs in this case do not claim the applicability of any of these well-defined exceptions and the Court finds no evidence to support them. The Court concludes that there is no general exception to the *Younger* doctrine for First Amendment claims.

## YOUNGER PRINCIPLES LIMITED TO QUASI-CRIMINAL CASES?

Plaintiffs argue that the extension of the *Younger* abstention doctrine to pending civil cases applies only to those pending civil cases which are quasi-criminal in character or which involve statutes "in aid of and closely related to criminal statutes". This argument would perhaps be tenable if *Huffman v. Pursue, Ltd., supra,* were still the last word on the subject. Since that time, however, the Supreme Court and many lower courts have made it clear that the *Younger* doctrine is not so narrowly confined.

Thus, in *Juidice v. Vail, supra,* the court clearly stated:

"We now hold, however, that the principles of *Younger* and *Huffman* are not confined solely to the types of state actions which were sought to be enjoined in those cases."

430 U.S. at 334, 97 S.Ct. at 1217.

The Court proceeded to explain that the "more vital consideration" behind the *Younger* doctrine is not the fact that state criminal process was involved but rather the notion of comity, a proper respect for state functions.

The point was sharpened in *Trainor v. Hernandez, supra,* where the Court repeated that *Younger* extends beyond criminal cases because of "basic concerns of federalism" which are even a "more vital consideration". 431 U.S. at 441, 97 S.Ct. at 1911. Finally, in *Moore v. Sims, supra,* the Court recognized that the *Younger* doctrine "was first articulated with reference to state criminal proceedings" but that the basic concern "is also fully applicable to civil proceedings in which important state interests are involved". While the Court acknowledged in *Moore* that the subject matter, namely temporary removal of a child in a child abuse context, is "closely related to criminal statutes", it nevertheless held that this circumstance *or* the presence of such other vital concerns as enforcement of contempt proceedings *or* the vindication of important state policies would be enough to require abstention. *Moore v. Sims,* 442 U.S. at 415, 99 S.Ct. 2371.

A brief review of the most recent lower court opinions tends to confirm the

broadening application of *Younger* principles to pending state civil cases.[7] A review of these cases and particularly the opinion in *Trainor v. Hernandez, supra,*[8] convinces this Court that, assuming *Younger* does not now apply to all civil cases[9], it would at the very least apply when the pending state civil case has the following characteristics:

(1) The state itself is a named party to the state proceedings;

(2) The state suit would tend to vindicate an important state policy;

(3) The state authorities had the option of vindicating these same policies through criminal prosecutions; and

(4) The federal constitutional claims can be raised in the pending state proceedings.

The facts in the present case clearly match each criterion above. Thus, we have here a situation where:

(1) The State of Texas is the named plaintiff in Cause No. 297,248 in the 200th Judicial District Court of Travis County, Texas, the pending state civil case which this Court is asked to enjoin;

(2) The State is seeking to vindicate an important state policy, namely the licensing and regulating of facilities providing care for children, a policy certainly similar in importance to the state policies designed to prevent child abuse involved in *Moore v. Sims* and which were implicitly found to be of sufficient importance to require abstention;

(3) The pending state suit is filed pursuant to the Human Resources Code, 1979 Tex.Sess.Law Serv., Ch. 842 §§ 42.001, et seq. While the state suit seeks injunctive relief and civil penalties under §§ 42.074 and 42.075, the Code also provides criminal penalties for persons operating a child care facility without a license. § 42.076; and

(4) Texas procedural rules would clearly allow the defendants in the State case to raise their constitutional claims. As observed by the United States Supreme Court, with regard to litigating constitutional claims in Texas courts, the Texas law "is apparently as accommodating as the federal forum". *Moore v. Sims,* 442 U.S. at 415, 99 S.Ct. 2371.

In connection with the fourth point above, Plaintiffs concede that they can raise their constitutional claims in the pending state case. Instead, however, they rather candidly assert that they view the state forum as insensitive and perhaps hostile to their First Amendment claims. This is an attitude which the court is patently forbidden to share. In *Huffman v. Pursue, Ltd., supra,* the Supreme Court noted:

"Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do." 420 U.S. at 611, 95 S.Ct. at 1211.

*Trainor v. Hernandez, supra,* cautions that a refusal to abstain improperly casts a "negative reflection on the State's ability to adjudicate federal claims". 431 U.S. at 446, 97 S.Ct. at 1919. *Moore v. Sims, supra,* suggests that failure to abstain would be warranted only "if state courts were not competent to adjudicate federal constitutional claims—a postulate we have repeatedly and emphatically rejected." 442 U.S. at 430, 99 S.Ct. at 2380.

**7.** E. g., *Williams v. State of Washington,* 554 F.2d 369 (9th Cir. 1977); *Dema v. State of Illinois,* 546 F.2d 224 (7th Cir. 1977); *Louisville Area Inter-Faith Com. v. Nottingham Liquors, Ltd., supra; Lang v. Berger,* 427 F.Supp. 204 (S.D.N.Y.1977). See also cases collected in *Johnson v. Kelly,* 436 F.Supp. 155, 163–64 (E.D. Pa.1977). The *Johnson* case was reversed in *Johnson v. Kelly,* 583 F.2d 1242 (3d Cir. 1978) because the Third Circuit concluded that the *Younger* doctrine "should not be extended to cases in which the state proceedings have not been initiated by the state itself." 583 F.2d at 1249. The Court agreed, however, that the argument that *Younger* is applicable only to "quasi-criminal" cases was "quite properly rejected" by the trial court. 583 F.2d at 1248.

**8.** 431 U.S. at 444, 97 S.Ct. at 1918.

**9.** The Supreme Court has consistently stated that this ultimate question remains open. *Huffman v. Pursue, Ltd., supra,* at 607, 95 S.Ct. 1209; *Juidice v. Vail, supra,* at 336, 97 S.Ct. at 1211; *Trainor v. Hernandez, supra,* at 445, fn 8, 97 S.Ct. at 1918.

■ In summary, therefore, this Court concludes that the present case is clearly one in which the United States Supreme Court would command abstention under the principles of *Younger v. Harris.*

## DISPOSITION OF THOSE PLAINTIFFS WHERE NO STATE SUIT IS PENDING

■ A knotty problem still remains. The pending state civil case names some seventeen defendants, only four of whom are plaintiffs in this federal case. Technically, therefore, the *Younger* doctrine would not apply to these remaining plaintiffs. For example, in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the Court applied the abstention doctrine to one plaintiff but not to the other two, because they had no pending state charges against them. Even though all parties were represented by common counsel and had similar business activities and problems, they were deemed to be unrelated in terms of ownership, control and management and were therefore treated individually. *See also Kew v. Senter,* 416 F.Supp. 1101 (N.D.Tex.1976), involving a suit by several professional "topless and bottomless" dancers. The court found abstention appropriate for all dancers except one against whom no state criminal proceedings were pending. In her case, although all the dancers were being represented by the same attorney and were employed by the same corporation, the court concluded that she should be treated as an individual because, if prosecuted and convicted, "she will have to bear her punishment alone". 416 F.Supp. at 1103. The Court has no quarrel with those holdings and if there were as an additional plaintiff in this case another church operating another child-care institution without a license, raising the same First Amendment contentions through the same attorney, the Court would not invoke the abstention doctrine as to that hypothetical plaintiff simply because the resolution of the pending state case would, as a practical matter, likely resolve the same common issues of law.

It seems to the Court, however, that the facts of this case present an entirely different picture. The bedrock issue is whether or not the state can enforce its licensing requirement for child-care homes when such a home is owned and operated by a church. The rights of the employees of the home,[10] the children in the home and their parents are merely appendages to that central question. If, at the conclusion of the state case, it is resolved that the constitutional rights of the church are paramount to the interests of the state, then the home will continue to operate without the offending licensing requirements. The corresponding rights of the children, their parents, and the staff members of the home will automatically be vindicated. On the other hand, if after proceeding through the state court case, including the right of appeal to the United States Supreme Court,[11] it is determined that a child-care home must be licensed even if it is operated by a church, then seemingly the collateral claims of the other plaintiffs that they have a constitutional right to either work at or live in such a home or place their children there would become academic, as the home itself would be forced to close. This, therefore, would seem to be the classic case contemplated by the Supreme Court in *Doran v. Salem Inn, Inc., supra,* when it stated that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them. . . . " 422 U.S. at 928, 95 S.Ct. at 2566. *See also Hjelle v. Brooks,* 424 F.Supp. 595 (D.C.Alaska 1976), where the court found sufficient "joint activity and common interest" to justify abstention even as to the federal plaintiffs who were not state defendants and imputed

---

10. The claims of the Church's employees would particularly seem to be governed by the opinion in *Hicks v. Miranda,* 422 U.S. 332 at 348, 95 S.Ct. 2281 at 2291 (1975).

11. 28 U.S.C. § 1257(2). *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 605, 95 S.Ct. 1200 at 1208 (1975).

the state prosecution to all the plaintiffs. *Id.,* at 597.[12]

## CONCLUSION

For all of the foregoing reasons, the doctrine of abstention as defined by *Younger v. Harris* and its progeny is unquestionably applicable to the Plaintiffs Corpus Christi Peoples' Baptist Church, Inc., Fay Cameron, Betty Yoder, and Helen Bradley, who are each defendants in the pending state case. The Church, which is the primary party whose interests are at stake under the Licensing Act, will have the full opportunity to vindicate the First Amendment rights of all the other federal plaintiffs in the pending state court case. The interests of all of the plaintiffs in this case are so common, joint and interrelated that the *Younger* abstention considerations must apply equally to all of them.[13]

For all of the foregoing reasons, the Motion for Preliminary Injunction by the Plaintiffs is hereby denied and this case will be dismissed without prejudice.[14]

## ON MOTION FOR RECONSIDERATION AND INJUNCTION

Subsequent to the Final Judgment of November 21, 1979, 481 F.Supp. 1101, denying Plaintiffs' Motion for Preliminary Injunction and dismissing this case, Plaintiffs have filed a "Motion for Amended and Additional Findings of Fact, Motion for Reconsideration, and Motion for Injunction Pending Further Order".

On the morning of November 2, 1979, shortly before the hearing on Plaintiffs' motion for Preliminary Injunction was scheduled to begin, the State of Texas filed its motion requesting the Court to dismiss the case on several grounds, including the doctrine of abstention. The Court advised the parties at the start of the hearing that abstention would obviously be a threshold question which must be resolved before the Court could consider the merits of the controversy. Nevertheless, since the parties and their witnesses had already gathered and were ready to proceed, the Court indicated that it would hear evidence on the merits subject to its eventual decision on the abstention question.

The Court has now held that it must refrain from exercising its jurisdiction and must instead allow this matter to be determined in state court. Plaintiffs now complain that the Court failed to make fact findings "which are essential to the causes of action set forth in the Complaint—in particular, in reference to violations of the Religion Clause of the First Amendment". The Court having found that equitable considerations of comity and federalism required it to refuse to exercise jurisdiction, the making of extensive fact-findings on the merits would be pure dicta at best and would serve no useful purpose. Moreover, the Court remains convinced that its original conclusions of law were correct. Accordingly, the Motion for Amended and Additional Findings of Fact and the Motion for Reconsideration of the Final Judgment is hereby DENIED.

Plaintiffs also attempt to invoke the provisions of Rule 62(c), Fed.R.Civ.P., and ask the Court to enter an injunction preserving the status quo during the pendency of their "possible appeal". By its express terms, Rule 62(c) applies only "[w]hen an appeal *is* taken from an interlocutory or final judgment granting, dissolving, or denying an injunction . . . ." (emphasis

---

**12.** This holding was based in part on the concurring opinion by Chief Justice Burger in *Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974), where it was suggested that if a union were seeking relief only because of the prosecutions of its members, there would be an identity of interest and the union would stand in the place of its prosecuted members. Under those circumstances, the members subject to prosecution would have a full opportunity to vindicate the First Amendment rights of both the union and its members in the state court proceedings. Id. at 830–831, 94 S.Ct. at 2208 (Burger, C.J., concurring).

**13.** *See Marsico v. Elrod,* 469 F.Supp. 825, 829 (E.D.Ill.1979).

**14.** Because of the Court's holding on the abstention issue, Defendants' other grounds for dismissal, *viz.,* improper venue, res judicata, and collateral estoppel, are not reached.

supplied) Plaintiffs here have given no notice of appeal as required by Rule 3, Fed.R. App.P., and therefore it cannot be said that an appeal has been taken in this case. Nevertheless, Rule 62(a), Fed.R.Civ.P., suggests that between entry of judgment and the taking of an appeal, the final judgment in an action for injunction may be stayed by express order of the court. For that reason, and also to obviate the necessity for reconsideration of this request if and when appeal is later perfected, the Court shall proceed to consider the Plaintiffs' request at this time.

▮▮▮ Four factors are to be evaluated by the Court in deciding whether or not to stay its judgment pending appeal, namely:

(1) A likelihood the Plaintiffs will prevail on the merits of the appeal;

(2) Irreparable injury to the Plaintiffs unless the stay is granted;

(3) No substantial harm to other interested persons if the stay is granted; and

(4) No harm to the public interest.

*Fortune v. Molpus*, 431 F.2d 799 (5th Cir. 1970); *Pitcher v. Laird*, 415 F.2d 743 (5th Cir. 1969); *Belcher v. Birmingham Trust National Bank*, 395 F.2d 685 (5th Cir. 1968).

▮▮▮ The Court is convinced that it has correctly applied the doctrine of abstention in this case and therefore does not believe there is a strong likelihood the Plaintiffs will prevail on appeal. Further, the Court is not convinced that its abstention causes irreparable injury to these Plaintiffs. Failure to grant an injunction simply means that the Plaintiff Church and others named in the pending state suit must participate in a hearing in the 200th District Court of Travis County, Texas, to determine whether or not the State is entitled to a temporary injunction prohibiting the operation of a child-care facility without a license. The Plaintiff Church will have full opportunity to assert its First Amendment claims and to argue that the requirement of a license would be unconstitutional in this case, exactly as it has argued in federal court. If

the State is granted an injunction in state district court, the Church would have the right of appeal through the Texas appellate courts [1] and ultimately to the United States Supreme Court.[2] The only "harm" to be suffered is that the initial decision on the merits will come from a state district court rather than a federal district court and is based on the persistent contention of the Plaintiffs—sometimes expressed and sometimes implied—that they will not get a fair hearing in state court but instead are doomed to an automatic defeat. This Court has already stated, however, that such an assumption is unwarranted and impermissible. Finally, in weighing the public interest, the Court observes that the entire premise for creation of the *Younger v. Harris* doctrine was the reluctance of federal courts to enjoin state proceedings based on public policy considerations. It would seem somewhat incongruous to follow that policy on the one hand but then on the other hand issue the same injunction against the same state proceeding so that Plaintiffs can pursue an appeal. It is the opinion of the Court, therefore, that at least three of the four required factors are not present in this case. It is therefore ORDERED that Plaintiffs' Motion for Injunction pending appeal is hereby DENIED.

---

1. See Rule 385(d), Texas Rules of Civil Procedure.

2. 28 U.S.C. § 1257(2).