AGENCY RENT–A–CAR, INC., Plaintiff,

v.

Michael J. CONNOLLY, Secretary of the Commonwealth of Massachusetts, Michael Unger, Director, Massachusetts Securities Division, and Spencer Companies, Inc., Defendants.

Civ. A. No. 82–0194–S.

United States District Court,
D. Massachusetts.

April 12, 1982.

Joshua M. Berman and James S. Dittmar, Berman, Dittmar & Engel, Boston, Mass., for plaintiff.

Carolyn V. Wood and Paul Johnson, Asst. Attys. Gen., Boston, Mass., for Connolly and Unger.

Sandra Lynch, Foley, Hoag & Eliot, Boston, Mass., for Spencer Companies.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

Agency Rent-A-Car, Inc. ("Agency") brought this action against Michael J. Connolly, Secretary of the Commonwealth of Massachusetts, Michael Unger, Director, Massachusetts Securities Division ("Director"), and Spencer Companies, Inc. ("Spencer"), seeking a declaration that Section 3 of the Massachusetts Act Regulating Take-Over Bids in the Acquisition of Corporations, M.G.L. c. 110C ("the Take-Over Act") is void and unenforceable because it is preempted by the Williams Act amendments to the Securities Exchange Act of 1934 and because it impermissibly burdens interstate commerce. Agency also seeks injunctive relief restraining the enforcement of Sections 2, 3, 6, 7 and 9(e) of c. 110C with respect to its take-over bid for Spencer.

The Commonwealth and Spencer have moved to dismiss the complaint or in the alternative to stay these proceedings in accordance with the equitable principles embodied in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

*Facts.*

From February 13, 1981 to November 13, 1981, Agency purchased approximately 38% of Spencer, Inc.'s shares of common stock in open market and privately negotiated transactions. On April 3, 1981, Agency filed with the Securities and Exchange Commission ("SEC") a statement on Schedule 13D. Agency made this filing, as required by the Exchange Act, within ten days after it became the beneficial owner of more than 5% of the outstanding shares.

On January 27, 1982, one day after filing its complaint in this court, Agency publicly announced a tender offer to acquire 250,000 shares of Spencer stock at $15 a share. If successful, Agency would own approximately 51% of Spencer stock. The offer is conditioned on Agency's obtaining a temporary restraining order, preliminary injunction or other relief against enforcement of Section 3 of the Act. That statute provides:

No offeror shall make a take-over bid if he and his associates and affiliates are directly or indirectly the beneficial owners of five per cent or more of the issued and outstanding equity securities of any class of the target company, any of which were purchased within one year before the proposed take-over bid, and the offeror, before making any such purchase, or before the thirtieth day following the effective date of this section, whichever is later, failed to publicly announce his intention to gain control of the target company, or otherwise failed to make fair, full, and effective disclosure of such intention to the persons from whom he acquired such securities.

On February 10, 1982, the Director held hearings to determine whether Agency had violated Section 3 of the Massachusetts Take-Over Statute. On March 19, 1982, the Director issued an opinion in which he found that Agency had purchased Spencer stock with the intent to gain control of Spencer during the period when it owned 5% of Spencer's equity securities and had failed to disclose that intent. He therefore concluded that Agency had violated the Act and ordered it to cease and desist from

acquiring Spencer equity securities until November 14, 1982. He also found that Agency's conduct was "evasive, deceptive and grossly unfair" in violation of section 7 of the Act and further ordered Agency to cease and desist from making a take-over bid for Spencer without limit of time.

## A. Motion to Dismiss.

### I. Younger Abstention.

 The equitable doctrine of abstention enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) does not apply in this case. Under the *Younger* doctrine, a federal court should consider, as a matter of equitable restraint, principles of federal-state comity before enjoining a pending state proceeding in which the federal issues asserted in the federal court could be raised.

 In the instant case, there is no pending state proceeding to which *Younger* applies. The administrative proceeding was concluded when the Director issued the March 19 order. Although Spencer subsequently did file an action in state court seeking to enforce the Director's decision, that action is not one to which the *Younger* doctrine is applicable because it was not initiated by the state. *Kennecott Corp. v. Smith*, 637 F.2d 181, 186 (3rd Cir., 1980); *Johnson v. Kelly*, 583 F.2d 1242 (3rd Cir., 1978); *Corpus Christi, etc. v. Tex. Dept. of Human Resources*, 481 F.Supp. 1101, 1109 (S.D.Tex.1979). Although the statute does give Agency the right to appeal the Director's findings to the state superior court, nothing in the *Younger* doctrine obligates a party to initiate federal constitutional claims in state courts or a federal court to restrain from exercising jurisdiction over federal claims.

Agency has claimed that the Massachusetts statute violates rights guaranteed under the federal constitution. The *Younger* principles simply are not "a broad, discretionary device for the evasion of the responsibility of federal courts to protect federal rights from invasion by state officials." *Morial v. Judiciary Commission of State of Louisiana*, 565 F.2d 295, 299 (5th Cir., 1977).

### II. Pullman Abstention.

 I also conclude that the doctrine enunciated in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) is inapplicable. The *Pullman* doctrine derives from the policy that whenever possible the state judiciary should resolve a matter on state law grounds if such bases for decision would obviate the need to reach a federal constitutional question. *Santasucci v. Gallen*, 607 F.2d 527, 529 (1st Cir., 1979).

The type of state question that usually triggers *Pullman* abstention is presented when "the unsettled issue of state law principally concerns the applicability of the challenged state statute to a certain person or a defined course of conduct, whose resolution in a particular matter would eliminate the constitutional issue and terminate the litigation". *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). On March 19, however, the Director concluded that Agency's conduct falls within the range of activity proscribed by the statute.

Moreover, unlike the court in *City Investing Co. v. Simcox*, 633 F.2d 56 (7th Cir., 1980) which addressed a similar situation, I cannot conclude that I should abstain because there is a substantial likelihood that the state court will determine that the Massachusetts Act is inapplicable to Agency's conduct. In *Simcox*, the court noted that the Indiana Take-Over Act

> ... applies only to acquisitions of 10% or more of a target company's stock; GDV has purchased but 5% of the outstanding Stokely common stock. The Act applies only to a "tender offer or request or invitation for tenders;" GDV has made only unsolicited purchases. Most glaringly of all, the statute *expressly exempts* ordinary broker-dealer transactions; those are the very sort of transactions in which GDV has engaged.

633 F.2d at 61.

In the instant case, Agency has clearly made a take-over bid, it owns more than 5% of equity securities in Spencer and it has

purchased equity securities within one year of making the take-over bid. The Director has concluded that it made those purchases with the intent to gain control of Spencer and has therefore violated Section 3 of the Act. Under these circumstances, I cannot conclude that his interpretation is so doubtful as to warrant my staying proceedings to allow the state courts to resolve the issue.

It is evident that both federal law and a state law apply to this situation and resolution of the case turns on an analysis of the policies of federal law. As the Court of Appeals for the Second Circuit noted in a similar case,

> It would be inconsistent with our paramount duty to interpret and protect federal policies to invoke Pullman abstention in this preemption case. *Kennecott Corp. v. Smith*, 637 F.2d 181, 185 (2nd Cir., 1980).

Accordingly, defendants' motions to stay proceedings are DENIED.

B. *Motion for Preliminary Injunction.*

I begin with the ritual recital of the necessary prerequisites to the granting of preliminary injunctive relief: the plaintiff must satisfy me that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of relief, that the relief granted will not be adverse to the public interest, and that the harm to the defendants from the grant of relief (if any) is likely to be less than the harm to the plaintiff from its denial. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006 (1st Cir., 1981).

I. *Probability of Success on the Merits.*

■ In my opinion, the plaintiff is likely to prevail on the merits on the ground that § 3 of the Take-Over Act on its face and § 7 as applied in this case are in conflict with a prescriptive federal statute regulat-ing take-over bids, namely sections 13(d), 13(e) and 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) and (e), § 78n(e), collectively commonly known as the Williams Act.

■ It is well settled that state take-over statutes which are in conflict with the Williams Act are invalid and unenforceable. *Kennecott Corp., et al. v. Smith*, 637 F.2d 181 (3rd Cir., 1980); *Great Western United Corp. v. Kidwell*, 577 F.2d 1256 (5th Cir., 1978); *Mite Corporation v. Dixon*, 633 F.2d 486 (7th Cir., 1980). A judge of this court has characterized M.G.L. c. 110C as "in hopeless conflict with the purpose of the Williams Act", and has enjoined its enforcement. *Vista Resources, Inc. v. Michael J. Connolly, et al.*, D.C.Mass. No. 82–0707–Mc, March 16, 1982.

Section 3 of the Take-Over Act[1] imposes disclosure requirements more stringent than those provided by the Williams Act. More importantly, however, the automatic sanction imposed for violation of these disclosure requirements is in effect a one-year freeze on the proposed take-over. While under the Williams Act, courts have ordered a variety of equitable relief, the relief has generally been designed to redress any injury to shareholders, to preserve the stockholders' right to make an informed decision to sell or not to sell and to preserve shareholders' rights to equal treatment to the extent mandated by the Williams Act. The mandatory statutory freeze, however, operates to foreclose the stockholders' choice for a year. The penalty for violation is a benefit to the incumbent management, not the stockholders. In my opinion, section 3 thus not only imposes more stringent requirements than the Williams Act but actually operates at cross-purposes thereto.

---

1. Section 3 states:

No offeror shall make a take-over bid if he and his associates and affiliates are directly or indirectly the beneficial owners of five per cent or more of the issued and outstanding equity securities of any class of the target company, any of which were purchased within one year before the proposed take-over bid, and the offeror, before making any such purchase, or before the thirtieth day following the effective date of this section, whichever is later, failed to publicly announce his intention to gain control of the target company, or otherwise failed to make fair, full, and effective disclosure of such intention to the persons from whom he acquired such securities.

M.G.L. c. 110C.

Furthermore, the defendant Director in this case has imposed an additional requirement that in order to satisfy section 3 its federal 13D filings should disclose "concrete alternative intentions or plans to be used if the primary plan fails".[2] So far as I know this has never been required under federal law.

 Section 7 of the Take-Over Act proscribes "any fraudulent, evasive, deceptive, manipulative or grossly unfair practices in connection with a take-over bid". Clearly this section expresses a legitimate state policy which is perfectly harmonious with the Williams Act. In this case, however, the Director has found evasive, deceptive and grossly unfair practices in the plaintiff's 13D filings. The sufficiency of 13D filings are exclusively a matter of federal law. I am of the opinion that the plaintiff enjoys a reasonable likelihood that section 7 as applied in this case represents an unconstitutional excursion into an area preempted by the Williams Act.

The Director's findings in support of his conclusions as to sections 3 and 7 create some difficulty in logical analysis. They are:

1. The plaintiff concealed its alternative intent to take over Spencer in the event that its effort to force Spencer to buy back its shares was unsuccessful.

2. The plaintiff was deliberately and admittedly deceptive in attempting to create the impression that it was going to take over Spencer in order to persuade Spencer to buy back its shares.

 While there may be some resolution of these findings, there is a fundamental problem underlying the Director's general approach to this case. It very sharply discourages the opportunist who enters the market with no intention other than to secure the best advantage to him-

self that he can as circumstances dictate from time to time. Federal law permits the opportunist to operate freely in the market so long as his opportunism is fairly disclosed. Whether the plaintiff's 13D filings meet the latter standard is clearly a matter of federal law, and indeed the question is squarely before this court in another related case.

II. *Likelihood of Irreparable Harm.*

 An indefinite delay in the take-over bid, for a year or longer, clearly gives the incumbent management of Spencer time to consolidate its defenses. It is a violation of the governmental neutrality envisaged by the Williams Act, *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58–59, 95 S.Ct. 2069, 2075–2076, 45 L.Ed.2d 12 (1975), that is not reparable.

III. *Conclusion and Preliminary Injunction.*

 I conclude that the plaintiff is likely to succeed on the merits and is likely to suffer irreparable harm if relief is not granted. I further conclude that the public interest in preserving governmental neutrality in the market will be served and that the harm to the defendants from the entry of a preliminary injunction will not outweigh the harm to the plaintiffs if no injunction is entered.

Accordingly, a preliminary injunction shall issue as prayed for.

---

2. P. 22 of Director's Opinion of March 19, 1982.